237 P.2d 594

**FERRET v. FERRET.**

No. 5273.

Supreme Court of New Mexico.

Nov. 5, 1951.

F. A. Catron, Santa Fe, for appellant and cross-appellee.

Harry L. Bigbee, Santa Fe, for appellee and cross-appellant.

SADLER, Justice.

The decree under review is the subject of attack by the plaintiff below, appearing here as appellant. She brings it before us by direct appeal and the defendant, challenging correctness of the decree in certain particulars, comes up on a cross-appeal. The decree was entered in a divorce suit instituted by plaintiff against the defendant. It granted the plaintiff an absolute divorce from defendant on the ground of incompatibility. She seeks no modification of the decree in this particular. It is mainly the changes, alterations and modifications which the decree makes in a settlement agreement entered into between the parties slightly less than a year before its entry of which plaintiff complains so vigorously.

The parties were married in a civil ceremony at Barcelona, Spain, on September 11, 1937. Shortly thereafter they left Spain and came to the United States, arriving here in October, 1937. Ever since the marriage and until the filing of the complaint in divorce they maintained toward each other the relationship of husband and wife, holding themselves out to the world and publicly representing themselves to be lawfully wed. There were no children born of the marriage.

There was no known legal impediment to their marriage at the time the ceremony was performed. However, at the trial the defendant offered in evidence, the plaintiff objecting to its admission, a photostatic copy of a certificate which recited that in a record described therein, certified as Record No. 182 of the Section of Matrimonies

of the Civil Register, in Barcelona, Spain, there was found recorded the recital of a purported nullification of the civil marriage contracted by plaintiff and defendant, as aforesaid. On the margin of this record, there appears a notation declaring the marriage to be null and void by virtue of the provisions of the Ministerial Orders of August 12, 1938, and March 8, 1939. The exhibit offered did not purport to be a copy of the record in question but only a certificate of what was claimed to be disclosed by it. Nevertheless, and regardless of any effect the purported decree which the record recites might have or be lawfully entitled to, it in no manner denied or impaired the validity of the marriage of plaintiff and defendant as a valid and legal marriage under the laws of Spain appertaining thereto at the time it was performed.

When the plaintiff filed her complaint in divorce against the defendant, there was then pending on the civil docket of the same court a suit by defendant as plaintiff against this plaintiff as defendant seeking an annulment of the marriage entered into between them in Barcelona, Spain, as aforesaid. While matters stood thus and under date of July 15, 1948, one day before the filing of her complaint in divorce, the parties entered into a marriage settlement agreement in which the husband, Andres Ferret, was party of the first part and Camille Haynes Ferret, the wife, was party of the second part, the preamble to which reads as follows: "Whereas, the parties hereto are now husband and wife, but have concluded that they can no longer live together in peace and harmony as such and have permanently separated, and whereas, being desirous of adjusting their respective property rights and all claims of whatsoever nature that either party may have or claim against the other, and the obligation of the first party to support the second party."

At its very outset, the agreement called upon the wife forthwith to institute suit for divorce in the district court of Santa Fe County and to prosecute the same expeditiously in accordance with the rules of the court, the husband agreeing at the same time to dismiss forthwith with prejudice his annulment suit pending in the same court. The paragraphs of the agreement providing for payments by defendant to plaintiff, read as follows:

"It Is Further Agreed that the party of the first part will pay to the party of the second part the sum of $125.00 at the execution hereof for her support and maintenance and in settlement of her property rights, and the sum of not less than $250.00 on the 10th of each successive month hereafter, together with an additional one-third of all of his net income in excess of $1000.00 per month which he shall receive.

"It Is Further Agreed that the party of the first part shall keep an accurate and complete set of books showing all cash re-

ceived in the practice of his profession, all accounts receivable and an accurate and complete account of all expenses connected with the operation of his profession; that the party of the first part shall remit to the party of the second part her one-third interest in all net sums which he shall receive in excess of $1000.00 per month on or before the 15th day of the succeeding month or advise the net amount of his income if under $1000.00. It is further agreed that the $250.00 per month, which the first party is to pay in any event, is not to be deducted from his gross income as an expense, except in his income tax returns nor are federal income taxes. That his net income shall be ascertained on the same basis and in the same manner as is used in computing Federal Income Tax, except no deductions shall be allowed first party for charitable contributions. It is further agreed that the party of the first part shall have an audit made of his books by qualified accountants at the end of each year, and that first party will furnish to the party of the second part a true and correct copy of same, together with a copy of his Federal and State income tax returns."

Other portions of the agreement relate to disposition of certain life insurance policies carried by defendant, limited payment of the $250 per month and the one-third of his net income as previously specified to the period the plaintiff should remain single, such payments to cease if she remarried and relieved defendant from further contributions other than keeping up premiums on the insurance policies mentioned, which were to be kept in the name of plaintiff as beneficiary regardless of any remarriage. Still other provisions related to a division of certain furniture and personal effects of the parties and for occupancy by the plaintiff of the home in which she was then living in Santa Fe until expiration of the lease held by the parties and for certain payments by defendant toward upkeep of the household for the period the plaintiff was to occupy the house.

The plaintiff attached a copy of the settlement agreement to her complaint in divorce as Exhibit "A", requesting that the court approve and confirm same as a fair and equitable adjustment of the property rights of the parties and all other matters therein set forth. The agreement was duly executed and acknowledged by both parties and bore written approval of the counsel representing the parties, respectively, at the time of its execution. The court's findings and conclusions touching this agreement as well as certain other phases of the case read as follows:

"10. That neither of the parties hereto fully performed the duties and obligations provided for under the contract herein.

"11. That the contract attached to plaintiff's complaint and marked Exhibit A is

not an equitable adjustment of the property rights of the parties nor is it an equitable or fair adjustment of the matters set forth therein.

"12. That the evidence with respect to community property belonging to the parties is either entirely lacking, or so meager that the Court is unable to make a finding thereon.

"13. That the plaintiff is capable, qualified and able to hold a responsible position and to support herself.

"14. That the contract attached to plaintiff's complaint and marked Exhibit A should not be approved by the Court.

"From the foregoing Findings of Fact the Court concludes as matters of law:

"1. That the Court has jurisdiction of the parties hereto and of the subject matter hereof.

"2. That as a result of the marriage ceremony entered into by them in Barcelona, Spain, on the 11th day of September, 1937, plaintiff and defendant legally became husband and wife.

"3. The Court having reserved its ruling on the objection of plaintiff to the admissibility in evidence of the certificate, photostatic copy whereof was attached to defendant's answer as Exhibit '1' thereto, now holds as a matter of law that the same is not admissible in evidence.

"4. That even if said certificate, Exhibit '1' to defendant's answer, were admissible and were admitted in evidence as proof of the nullification by the Spanish Government of the marriage between plaintiff and defendant, this Court, having due regard for the applicable principles of comity and international law, is not required to recognize and give effect to the said acts of the Spanish Government and could not do so without violating the due process and equal protection clauses of the Constitutions of the State of New Mexico and of the United States, the constitutional prohibitions of the State of New Mexico and the United States against ex post facto laws, and the recognized policy of the courts of this State relating to the recognition to be accorded marriages legally contracted and the legality of the marital status of the parties resulting therefrom.

"5. That under the laws of this State plaintiff and defendant are now and at all times material herein have been legally husband and wife.

"6. That the contract entered into by the parties hereto attempts to infringe on the powers of the Court with respect to the allowance of alimony.

"7. That the evidence introduced herein, including that contained in the contract, is not sufficient to enable the Court to make an adjudication with reference to community property.

"8. That a contract attached to plaintiff's complaint and marked Exhibit A is unjust and inequitable under the circumstances of the parties at this time and should not be adopted and confirmed by the Court.

"9. That plaintiff is legally entitled to and should be awarded an absolute divorce from defendant."

Pursuant to the foregoing findings and conclusions, the trial court entered its decree in the case, reading as follows:

"This matter coming on to be heard on the testimony heretofore submitted, and the Court having heretofore filed its Findings of Fact and Conclusions of Law;

"It is, therefore, Ordered that the plaintiff, Camille Haynes Ferret, is hereby granted a divorce from the defendant, Andres Ferret, on the ground of incompatibility.

"It is further Ordered that the defendant shall pay alimony to the plaintiff and shall repay to her, at least in part, the advances heretofore made to him by such plaintiff. That the payments to be made by the defendant to the plaintiff shall be arrived at and paid as follows.

"1. That defendant shall keep an accurate and complete set of books showing all cash received in the practice of his profession, all accounts receivable, and an accurate and complete account of all expenses connected with the operation of his profession. That until December 31st, 1953, the defendant shall pay to the plaintiff one-third of all net sums which he shall receive in excess of $1,000 per month, on or before the 15th day of the following month, or if his net income for any particular month is not $1,000, he shall so advise the plaintiff of those facts. In connection with the above, the defendant's net income shall be ascertained on the same basis, and in the same manner as is used in computing Federal Income Tax as a single person, except that deduction shall be allowed for monthly payments to the plaintiff but not for charitable contributions. Further, with reference to this provision, an audit of the defendant's books shall be made at the defendant's expense by a qualified accountant at the end of the years 1949 and again at 1950, and at the time of such other years as may be required either by order of this Court, or by request in writing from the plaintiff, and that a copy of said audits will be furnished to the plaintiff herein, and another copy filed in this Court.

"2. That commencing with the month of February, 1949, and throughout the balance of the year 1949, the defendant shall pay to the plaintiff the sum of $100 a month, payable on the first day of each month. Commencing with the month of January, 1950, and continuing thereafter for the balance of said year, the defendant shall pay the plaintiff the sum of $200 per month. Commencing with the month of January, 1951, and continuing for a period of three years

thereafter, the defendant shall pay to the plaintiff the sum of $250 per month. Provided, however, that all of the above monthly payments are to be paid only during the time that the plaintiff shall remain unmarried, and in the event of her remarriage, the monthly payments shall then be discontinued.

"It is further Ordered that the provisions of the Stipulation entered into by and between the parties and the Order entered pursuant thereto filed in this cause on the 26th day of February, 1949, be, and the same hereby are, made to apply to the provisions of the Decree herein, with reference to the monthly payment for the month of February, 1949.

"It is further Ordered that the plaintiff be made the beneficiary of the so-called Government Life Insurance Policy owned by the defendant, and that the defendant be required to furnish satisfactory evidence to this Court that the plaintiff has been made such beneficiary; and, it is further Ordered that the plaintiff shall remain the beneficiary of said policy until the further Order of the Court, or until her remarriage.

"It is further Ordered that the defendant pay to the plaintiff for and on behalf of her attorney's fee, the sum of $250."

Opposing counsel spend much time and space in briefs filed in arguing the question whether the burden of proof was on plaintiff or defendant to establish unfairness and inequity in the contract of settlement which the husband and wife entered into on the eve of filing her complaint in divorce. It is strongly insisted by plaintiff that the burden rested on defendant. The latter's counsel with equal zeal asserts and argues the contrary. He calls our attention to an allegation in paragraph 5 of the complaint which he contends submitted the contract for confirmation and approval by the court, thus throwing the burden of proving its fairness and equity upon her, as he insists. It reads: "5. That the parties hereto have entered into a marriage settlement contract adjusting all of their community property rights and the duty of defendant to support the plaintiff; that a copy of said agreement is hereto attached marked 'Plaintiff's Exhibit A', which it is requested that the Court approve, adopt and confirm as being a fair and equitable adjustment of the property rights of the parties, and all other matters as therein set forth." This allegation was denied by the defendant and he specifically denied the contract was in full force and effect, adding that it had been rescinded by both parties thereto.

We find it unnecessary to determine from the standpoint of nicety of pleading upon whom rested the burden of proof in this particular. Neither do we find it important to declare whether, as defendant strongly insists, the fairness and equitable character of the settlement agreement was litigated by plaintiff without objection and, therefore,

not open to objection on the pleadings by plaintiff. It is well to add, however, that if the matter were to be decided on this basis, something could be said in support of defendant's position on latter question. But, as indicated, neither of the questions mentioned need be determined by us, for reasons now to be stated.

This was a divorce suit. The plaintiff sought in it an approval or confirmation of the settlement agreement entered into between the parties. In addition to her allegation as to its fairness and equitable nature shown above, the last paragraph of the settlement agreement itself provided: "This contract is made subject to the confirmation and approval of the District Court of Santa Fe County, New Mexico, and is subject to all other laws of the State of New Mexico, in relation to the payments of sums for alimony," pursuant to which, the closing lines of the prayer of the complaint read: "that the Court approve, adopt and confirm the marriage settlement contract heretofore entered into, and for such other relief as shall be meet and just."

The foregoing excerpts from the complaint are to be viewed in the light of the broad powers of the district court in all divorce suits touching alimony, reading: " * * * and, on final hearing, may allow the wife such a reasonable portion of the husband's separate property, or such a reasonable sum of money to be paid by the husband, either in a single sum, or in installments, as alimony, as under the circumstances of the case may seem just and proper; and may modify and change any order in respect to alimony allowed the wife, whenever circumstances render such change proper; * * *." 1941 Comp. § 25–706.

There follows the pertinent inquiry: Are the installment payments for the wife provided by the contract awards in lieu of alimony? If they are, and we are so convinced, then it follows as day the night that the trial court not only had the right but it was its bounden duty to inquire into the fairness and equitable nature of provisions made in the contract for the payment thereof. Nor was it to be denied this right by any technical rule of pleading. And the fact that upon such inquiry it may ascertain and provide lesser awards as alimony than the contract stipulates in no way mitigates against its right and duty to make the inquiry. Indeed, in reducing the amount of alimony installments stipulated in the contract the court may actually have advantaged the wife, if the husband is able to pay the lower award fixed in the decree and not the higher one stipulated in the contract.

We think a fair appraisal of the settlement contract as a whole leaves little doubt that the payments in favor of the wife provided for in the contract were in discharge of the husband's obligation to support and maintain her and, hence, were in lieu of ali-

mony. Indeed, in the preamble to the contract is to be found a recitation of the parties' desire to adjust their property rights and claims of whatever nature against each other and, as well, "the obligation of the first party (the husband) to support the second party (the wife)." When to this recital we add the proviso limiting the payments provided to the period the wife (plaintiff) should remain single, it is difficult to avoid the conclusion that the payments are in fact as for alimony and intended so to be. It thus is entirely logical that the husband's liability to make payments for the wife's support should end with her remarriage when another becomes liable therefor. We find the contract so provided, as the court doubtless would decree under its reservation of jurisdiction, upon remarriage of the wife, if the parties themselves had not so stipulated. Mindlin v. Mindlin, 41 N.M. 155, 66 P.2d 260.

We conclude that the payments provided for in the contract were intended as support for the wife and take on the character of alimony. Lazar v. Superior Court, 16 Cal.2d 617, 107 P.2d 249. Hence, the district court could not be denied its statutory powers in relation thereto. Embraced in Point V of her brief is to be found the only contention which disturbs us as to correctness of the conclusion just announced. It will be next discussed.

The point just mentioned reads: "The decree appealed from fails to carry out the express intention of the court both as therein set forth and as expressed in the court's decision dictated into the record."

The position of counsel for plaintiff under this point may be best presented in language to be taken from his reply brief. It reads:

"In its decision dictated into the record, the Court stated at Tr. p. 206: 'I might say this, it is the Court's intention that during the next five years that the plaintiff receive a percentage of the defendant's income. I have further on provided that some monthly payments shall be made, but I did feel that in view of the large amounts of money paid out by the plaintiff of her own separate funds, that she had a definite investment in the doctor's future and was entitled to some recompense therefor.'

"In its decree, the Court stated: 'It is further Ordered that the defendant shall pay alimony to the plaintiff and shall repay to her, at least in part, the advances heretofore made to him by such plaintiff.'

"In its decision dictated into the record, the Court further stated at Tr. p. 207, referring to the monthly payments that were to be made by Defendant to Plaintiff: ' * * All of the above monthly payments, however, to be paid only during the time that the Plaintiff shall remain unmarried, and in the event she should remarry, then no more monthly payments will be paid by defendant as provided, except that the plaintiff shall continue to receive the amounts provided in

paragraph 1 hereof until she shall have received the total sum of $5,000. In other words, gentlemen, if, just as an example, and the Court has no reason to know that it might happen or might not, but should the plaintiff remarry a year from now, before the doctor's income for any month has reached $1,000, in other words so he would pay the plaintiff anything on that over the $1,000, then you would still pay her $5,000.'

"It is clear that the Court intended to make provision for payments of two kinds: (1) alimony, and (2) repayment, at least in part, of moneys advanced by Plaintiff to Defendant. Certainly the intention of the Court in this respect cannot be escaped."

In making this contention counsel agrees that these "remarks" of the court do not constitute findings of fact or conclusions of law and are not part of the decree, except the small excerpt quoted above and so indicated a portion of which reads "and shall repay to her, at least in part, the advances heretofore made to him by such plaintiff." That this concession by plaintiff's counsel is forthcoming is demonstrated by the following language of the court introductory to the comment of the court quoted by counsel. It reads: "Gentlemen, I have written out my remarks, and although I do not plan to give you gentlemen a copy of it, I will read it to you and it will be available, if you wish to peruse it. Naturally, it isn't a judgment, and in no

way is it to be considered Findings of Fact, merely the court's remarks, some of which will later go into the judgment, of course."

The first answer made by counsel for defendant to this claim is that the error, if any, was not reserved below, either by request for findings or claim in the pleadings that defendant was indebted to plaintiff, or in any other manner. Counsel further insists that error has not been assigned in this behalf here and that as a result of these considerations the claimed error in the decree is not before us. Plaintiff's counsel practically admits the record to be as defendant claims by invoking fundamental error in the decree in the respect mentioned.

We might very well dispose of the point by saying the claim of error not having been reserved below nor assigned here will not be noticed. This, however, would be an unsatisfactory way of disposing of the error claimed where there is a sufficient answer to it on the merits, as here.

██ True enough there is in the "remarks" of the court some basis for this claim. In his language introducing the remarks plaintiff's counsel refers to them as occurring in the court's "*decision* dictated into the record." (Emphasis ours.) But this is not the "decision" containing the court's findings of fact and conclusions of law upon which alone the judgment rests. The trial judge himself made this very

clear in his introductory language quoted above preceding his remarks. The rule is, however, that comment or remarks of the court in the course of the trial may not be invoked to impeach or supplement findings adopted. Furthermore, the judgment of the court is to be construed with reference to findings actually made. Stroup v. Frank A. Hubbell Co., 27 N.M. 35, 192 P. 519, 32 A.L.R. 450.

When we attempt to do that in this case we run into difficulty. Nowhere in the decision filed may a finding be found bearing the slightest relationship to the short recitation in the decree relied upon by plaintiff to show an intent on the part of the court that defendant should repay advancements by the wife during coverture for defendant's benefit or for living expenses for the spouses. On the contrary that such could not have been the intention of the trial court is clearly demonstrated by the decretal order directing cessation of payments to plaintiff upon her remarriage. We are forced to conclude this point is without merit and cannot be sustained.

So much for the claims of error relied upon by the plaintiff in her challenge to correctness of the decree. They either are disposed of by what has been said or are found to be without merit. This leaves only for consideration the claims of error relied upon on defendant's cross-appeal which will now be considered and ruled upon.

The defendant relies chiefly upon two claims of error in presenting his cross-appeal. First, he says, in effect, that the plaintiff committed bigamy in entering into a marriage with defendant because at the time she did so she was still the wife of one Elliot Paul. Next, it is claimed she never became the wife of the defendant because, if it be not so because of what has just been said, it is so because the marriage to defendant at Barcelona, Spain, a civil ceremony, if otherwise valid according to the laws then prevailing there, was later invalidated ab initio and rendered null and void pursuant to Ministerial Orders of Spain, directed by a decree of Franco, the dictator, at the time he conquered this territory from Republican or Loyalist Spain.

The facts in regard to the first error claimed are somewhat involved but it is necessary to state them in order to understand the matter, especially the court's ruling thereon. It is a fact that plaintiff had entered into a marriage ceremony with one Elliot Paul, an author of note, prior to her marriage to defendant. This marriage took place at Garnes, Seine et Oise, France, on March 28, 1928. She did not marry defendant until September 11, 1937. At the time she married Paul, unknown to her, he was still the husband of one Rosa G. Paul,

from whom an interlocutory decree in divorce had been entered in the county of Norfolk, State of Massachusetts, at her instance, which did not become final until August 4, 1928. Accordingly, says the plaintiff here, her purported marriage to Paul was invalid and that to defendant perfectly valid.

In endeavoring to sustain his first point on the cross-appeal, counsel for the defendant must set aside finding No. 2 made by the trial court, reading as follows: "2. That as a result of the marriage ceremony entered into by them in Barcelona, Spain, on the 11th day of September, 1937, plaintiff and defendant legally became husband and wife."

As stated, this finding of fact presents an insurmountable barrier to defendant as cross-appellant, unless he can nullify same as a matter of fact or as a matter of law. Although the question is not to be resolved without some difficulty, we are constrained to hold the finding must stand. Where to hold otherwise would convict innocent parties of bigamy, slight evidence will support a finding that exonerates them of the charge. The plaintiff (cross-appellee) testified that her former husband Paul informed her he had obtained a divorce from her while in Mexico on an absence of which she had actual knowledge, as her testimony indicates. There is no evidence as to the length or duration of his absence.

The trial judge without other testimony on the point might infer it was long enough to acquire residence. The wife's testimony as to the actual securing of divorce by him was hearsay to be sure but it was not objected to and may properly be considered to support the finding mentioned. Priestley v. Law, 33 N.M. 176, 262 P. 931; Wellington v. Mutual Ben. Health & Accident Ass'n, 39 N.M. 98, 40 P.2d 630. Furthermore, the finding in favor of the validity of plaintiff's second marriage is supported by one of the strongest presumptions known to the law. 55 C.J.S., Mandamus, §§ 335, 339, pp. 593, 596; In re Jubala's Estate, 40 N.M. 312, 59 P.2d 356; Tallent v. Tallent, 43 N.M. 261, 91 P.2d 504.

The defendant asserts that the case of Golden v. Golden, 41 N.M. 356, 68 P.2d 928, holds so-called "Mexican divorces" invalid. It did so under the facts of that case because residence of the parties, especially of the complainant in divorce, was not shown. Indeed, the want of it was affirmatively shown. If, as Elliot Paul informed plaintiff here, he had actually secured a divorce from her in Mexico, all essentials to the validity thereof may be presumed unless, without more, no divorce secured in that republic, however closely it may conform in every respect to local requirements as to residence, service and otherwise is to be rejected and outlawed as of course in the courts of this state. We know of no decision so holding.

There is another consideration which supports, as a matter of law, the finding of a valid marriage between plaintiff and defendant, insofar as this claim of error on cross-appeal is concerned. When it became known to counsel and defendant (cross-appellant) that the marriage ceremony between plaintiff and Elliot Paul had been performed before the interlocutory decree of divorce of Paul from his former wife became final, a colloquy occurred between the court and opposing counsel in which the exact date of the marriage between plaintiff and Paul became important as bearing on this question. It appeared to be the view both of court and counsel that if the date given by plaintiff was accurate, then the question of the effect of the marriage between her and Paul would not be gone into. It seems some instrument from France pertaining to the date of the marriage was to be introduced in evidence later to confirm the date given by plaintiff. At this point counsel for defendant stated: "Mr. Bigbee: But I think it would save substantial time because if she establishes, or if these documents establish that that ceremony was actually prior to the time his divorce became absolute I will concede the law is against our contention, so if it is agreeable with Court and counsel, we will leave this entire matter open."

Although some colloquy between court and counsel touching on the subject follows and notwithstanding the defendant requested findings and assigned error because of the court's ruling in this particular, no formal renunciation of counsel's concession that if the marriage between plaintiff and Paul took place before the decree of divorce from his former wife became final, the marriage between plaintiff and defendant would be unaffected by reason thereof. Hence, if as defendant asserts, the marriage between plaintiff and Paul was lawful, any holding otherwise by the trial court appears in the category of invited error and cannot now be availed of by defendant. Rheinboldt v. Fuston, 34 N.M. 146, 278 P. 361.

Next, we shall consider defendant's second claim of error on his cross-appeal. It is under this claim that he insists the civil marriage ceremony entered into between the parties in Barcelona, Spain, on September 11, 1937, was nullified by decree of Franco, the dictator, when he overran and conquered this part of the Republic of Spain. Thus, as he argues, the plaintiff and defendant never became husband and wife. We think the contention is wholly without merit.

It is a universal rule that the lex loci contractus governs the validity of a marriage. Hence, and as a matter of comity, the maxim that a marriage valid where performed is valid everywhere. 55 C.J.S., Marriage, § 4, p. 811. It is this

doctrine that gives validity to the marriage outside the confines of the country or state where performed. Counsel for defendant cites not a single case supporting his contention that the later act of the Franco government invalidating the type of marriage entered into by plaintiff and defendant can have any effect outside the borders of Spain. It violates in spirit our fundamental concept that ex post facto laws are iniquitous and are forbidden in the federal and state constitutions. Accordingly, we may add to the doctrine the factor of time to make marriages valid *"when* and where" celebrated, valid everywhere.

We recognize the doctrine of comity in our statutes. They declare marriages celebrated beyond the limits of this state, valid according to the laws of the country where celebrated or contracted, shall be likewise valid in this state and shall have the same force as if they had been celebrated in accordance with the laws enforced in this state. See 1941 Comp. § 65–104. This contention is so devoid of merit that we shall not spend more time in discussing it.

■ The plaintiff prays for an allowance of attorney's fees in her behalf for services of her attorney on this appeal and defendant's cross-appeal. Our power to make such award cannot be successfully challenged. Lord v. Lord, 37 N.M. 454, 24 P.2d 292. And, in view of the nature of the questions involved, the extent of the record

and of the work done by counsel as demonstrated by the briefs filed, we think the allowance in plaintiff's favor for attorney's fees here should be $500, to be taxed as costs.

It follows from what has been said that the judgment should be affirmed, the defendant to pay costs of the appeal and cross-appeal, including attorney's fees as allowed, to be taxed by the Clerk.

It is so ordered.

LUJAN, C. J., and McGHEE and COMPTON, JJ., concur.

COORS, J., being absent, did not participate.