287 P.2d 238

Gladys Kemp SCANLON, Plaintiff·Appellant,

v.

Martin F. SCANLON, Defendant-Appellee.

No. 5868.

Supreme Court of New Mexico.

April 27, 1955.

Rehearing Denied Sept. 15, 1955.

As Amended Oct. 5, 1955.

44

Rodey, Dickason, Sloan, Mims & Akin, Charles B. Larrabee, Albuquerque, for appellant.

W. A. Keleher, A. H. McLeod, Keleher & McLeod, J. C. Ryan, Albuquerque, for appellee.

Hannett & Hannett, Jones Stiff & Briggs, and Richard C. Losh, Albuquerque, as amici curiae on motion for rehearing.

KIKER, Justice.

In this case the plaintiff filed a petition asking the court for an order increasing an allowance from the defendant, from whom she was divorced, for her support and maintenance.

Originally, the responsibility of the defendant to pay to the plaintiff monthly installments for her support and maintenance, was a contract entered into between the parties bearing the date April 28, 1947. This agreement, executed in New York, provided, among other things, that the husband would pay to his wife the sum of fifty dollars per month for her support and maintenance. Other details of the contract will be shown after the nature of the litigation has been stated.

About twenty days after the agreement above mentioned was entered into by the parties, the plaintiff filed her suit for divorce in the district court of Bernallilo county New Mexico. The complaint alleged that plaintiff and defendant were residents of said county and state; that they were married on May 15, 1934 and that they were still husband and wife; that no children had been born of the marriage; that they were incompatible to the extent that they could not live together in peace and harmony; and that they had, because of incompatibility, lived separate and apart since October 1945—about eighteen months.

The plaintiff then alleged that as husband and wife, plaintiff and defendant had entered into a separation agreement on the 28th day of April 1947 and a copy of this agreement was attached to the complaint and made a part thereof. Plaintiff further stated that by the terms of said separation agreement the parties had adjusted all rights in the marital and community property of the parties. She prayed an absolute divorce and that the decree should provide for the property rights of the parties in accordance with the provisions of the attached exhibit; and that the decree provide that alimony be paid to the plaintiff in accordance with paragraph two of the agreement.

For answer defendant stated that he was unable to deny the allegations of the complaint, and he prayed the judgment of the court.

On June 20, 1947 a decree was entered in the divorce suit in which an absolute divorce was granted. The said decree contained the following paragraph:

"2. That the provisions of the agreement attached as Exhibit "A" to the complaint herein are hereby approved and confirmed and are hereby made a part of this Decree as fully as though specifically incorporated herein in full."

Nearly seven years later, on February 17, 1954, plaintiff filed her petition in said suit praying that the award of support and maintenance made by the court "be in-

46

creased to a sum as to the court may seem just, and for such other and further relief as to the court seems fit." The prayer of this petition was based upon facts alleged as follows: (1) that the court, in the decree of divorce, awarded to plaintiff the sum of fifty dollars per month for her support and maintenance; (2) that since the making of the decree plaintiff became ill and incurred extraordinary medical expense and expects to continue to incur such expense; (3) that the sum of four hundred and fifty dollars monthly is necessary for her support and maintenance in the state and manner to which she was accustomed at the time the decree was entered; that she had been forced to rely on the benevolence of relatives for her support; that the financial status and physical condition of the plaintiff has undergone material and substantial change for the worse since the decree was entered.

Plaintiff alleged that the financial status of the defendant had undergone material and substantial change for the better since the entry of said decree; and that defendant at the time of the entry of the decree was a brigadier general in the Army Air Force having an annual base pay of about six thousand dollars; that he had become vice-president of Republic Aircraft Corporation with an annual income, according to the information and belief of the plaintiff, of between fifteen and twenty thousand dollars.

Plaintiff's contention is that the decree awarded to her the sum of fifty dollars to be paid monthly as alimony and that the obligation and responsibility of defendant for her support is continuing and that the decree entered by the court is subject to such modification at any time, whether by increase or by decrease of the amount allowed for support and maintenance.

It is defendant's contention that the court is without jurisdiction to in any way change or modify the decree as to the support of the plaintiff. Defendant asserts that the rights of the parties are based upon the terms of the agreement entered into between them before the divorce was granted, and that any change must be by agreement of the parties or by a suit upon the contract. Defendant states that the provision for payment to the plaintiff of the sum of fifty dollars a month for her support and maintenance is merely a part of a property settlement agreement and is not alimony or in the nature of alimony and that the court is powerless to alter the terms of the decree, even though the agreement, a copy of which was attached to plaintiff's complaint and referred to in the decree as being so attached, was approved and confirmed and in the words of the court "made a part of this decree as fully as though specifically included herein in full."

These contentions of the parties are diametrically opposed and so require a

statement as to the terms and conditions of the agreement entered into by the parties.

The agreement states that the parties were married in New York on May 15, 1934 and that at the time it was made they were living separate and apart and had been so living for about one and one-half years, and that they had agreed to live separate and apart during their natural lives.

The consideration stated in the agreement was the mutual promises, covenants and agreements contained therein.

They agreed to live separate and apart, each free from the marital control or authority of the other and each at any place or places of his or her choice; and the defendant promised to pay "to the party of the first part for her support and maintenance the sum of fifty dollars per month, payable on the first day of each and every month while both remain alive * * *" This obligation, however, was subject to two provisions which would relieve defendant from making any payments. The first of these was that in the event of the retirement of the second party from the military service there should be no further payments. The next provision was that in case either of the parties should secure a divorce and either should thereafter again marry, then said payments should immediately cease and terminate. The second paragraph of the agreement further provides that both parties acknowledge that the monthly sum to be paid,

" * * * is a fair, suitable, and proper sum to be paid to the party of the first part for her support and maintenance; that it is commensurate with the financial means and social position of both parties; that it will enable the party of the first part to maintain herself on the same scale of living to which she has been accustomed; and that it is within the ability of the party of the second part to pay."

The agreement provided that the first party, as inducement to the second party to enter into the agreement, represents and warrants that she has not in the past contracted debts or created liabilities binding on the second party or his legal representatives, heirs or assigns; and further that she will not in the future contract any debts or create any liabilities which will be binding on the second party or his representatives, heirs or assigns; and that she will save him harmless and indemnify him against any and all debts and liabilities previously contracted or incurred or any that might in the future be contracted or incurred by her.

The agreement provided that in case either of the parties should institute an action for absolute divorce from the other or any other action relating to the marital status of the parties,

" * * * the commencement of such action and the entry of a final decree

therein shall in no way abrogate or modify any of the covenants of this agreement and, in the event of any such action, this agreement shall be incorporated into such final decree entered therein. The first party covenants that, in the event of any such action, she shall not be entitled to and shall not make any claim, in such action or otherwise, against the second party for temporary or permanent alimony for her support and maintenance or for counsel fees."

The agreement provided for payment by the second party, defendant, to a law firm, of the sum of five hundred dollars, as attorney's fees for the first party, and that the second party will not thereafter be liable for any other or further legal services rendered to the first party.

The agreement provides that the parties will execute and deliver all instruments necessary to carry out its terms.

A further provision of the agreement reads as follows:

"That there shall be no modification, waiver or amendment of any of the covenants of this agreement unless the same is in writing and executed by the parties hereto."

Whether the agreement of the parties is to be interpreted under the laws of New York, where it was made, or of New Mexico, where it became a part of a decree of divorce of the parties, is of little importance because at the time the agreement was made New York law provided as follows:

"A married woman has all the rights in respect to property, real or personal, and the acquisition, use, enjoyment and disposition thereof, and to make contracts in respect thereto with any person, including her husband, and to carry on any business, trade or occupation, and to exercise all powers and enjoy all rights in respect thereto and in respect to her contracts, and be liable on such contracts, as if she were unmarried; but a husband and wife cannot contract to alter or dissolve the marriage or to relieve the husband from his liability to support his wife. * * *" Domestic Relations Law, Art. 4, § 51, McKinney's Consol.Laws, c. 14; Consolidated Laws Service, New York, Vol. 3.

See Kyff v. Kyff, 286 N.Y. 71, 35 N.E.2d 655; Stone v. Stone, 173 Misc. 774, 19 N.Y.S.2d 93; Moore v. Moore, Sup., 59 N.Y.S.2d 22; Strahl v. Strahl, Sup., 64 N.Y.S.2d 490.

At the time of the making of this agreement there was in effect in New Mexico Section 22–7–6 N.M.S.A., 1953 Comp. which in part provides:

" * * * and, on final hearing, may allow the wife such a reasonable

portion of the husband's separate property, or such a reasonable sum of money to be paid by the husband, either in a single sum, or in instalments, as alimony, as under the circumstances of the case may seem just and proper; and may modify and change any order in respect to alimony allowed the wife, whenever circumstances render such change proper * * *."

The last clause of the quotation just taken from the statute was inserted by amendment in the year 1943 and except for that clause the section has been in existence since its enactment in 1901. When the agreement was made it was necessarily controlled as to any provision by any statute of the state of New Mexico which covered that provision.

■ The language which we have quoted from our statute as it existed at the time the agreement was made became a part of the agreement when it became a part of the decree of divorce, even though the parties may not have had knowledge of the existence of the statute. Not only so, but the contract provided that in case of an application for divorce by either party, the agreement should be submitted to the court; and it went even further than the provision for mere submission to the court in that it provided for the terms and conditions of the agreement to be made a part of the decree.

This was an undertaking by the parties to control the discretion of the district court of New Mexico where both parties, as shown by the agreement, had their residence.

We set out here certain New Mexico statutes concerning the power of the husband and wife to enter into contracts between themselves.

"Either husband or wife may enter into any engagement or transaction with the other, or with any other person respecting property, which either might, if unmarried; subject, in transactions between themselves, to the general rules of common law which control the actions of persons occupying confidential relations with each other." Section 57–2–6 N.M.S.A., 1953 Comp.

"A husband and wife cannot by any contract with each other alter their legal relations, except of their property, and except that they may agree in writing, to an immediate separation, and may make provisions for the support of either of them and of their children during their separation." Section 57–2–12, N.M.S.A., 1953 Comp.

■■ A separation agreement in New Mexico, though binding upon the parties during such time as they are separated as husband and wife, when submitted in a divorce case for consideration of the court, is subject to such action as the court in its

discretion may take. The court may disregard any previous agreement for support and make such award as in the discretion of the court may seem just and fair. Ferret v. Ferret, 55 N.M. 565, 237 P.2d 594, 599.

In Ferret v. Ferret, supra, prior to the application for divorce, the parties had entered into a marriage settlement agreement in which provision was made for the support and maintenance of the wife until such time, after a divorce, as she might remarry. The agreement provided that the wife should institute suit for divorce. The wife filed a complaint for divorce on the ground of incompatibility and attached to the complaint a copy of the marriage settlement agreement. Plaintiff prayed that this settlement agreement be approved and confirmed by order of the court.

We quote three of the findings of fact made by the court:

"'11. That the contract attached to plaintiff's complaint and marked Exhibit A is not an equitable adjustment of the property rights of the parties nor is it an equitable or fair adjustment of the matters set forth therein.'"

"'12. That the evidence with respect to community property belonging to the parties is either entirely lacking, or so meager that the Court is unable to make a finding thereon.'"

"'14. That the contract attached to plaintiff's complaint and marked Ex-

hibit A should not be approved by the Court.'"

The court stated the following conclusion of law:

"'6. That the contract entered into by the parties hereto attempts to infringe on the powers of the Court with respect to the allowance of alimony.'"

We quote from the opinion of this court in the Ferret case:

"There follows the pertinent inquiry: Are the installment payments for the wife provided by the contract awards in lieu of alimony? If they are, and we are so convinced, then it follows as day the night that the trial court not only had the right but it was its bounden duty to inquire into the fairness and equitable nature of provisions made in the contract for the payment thereof. Nor was it to be denied this right by any technical rule of pleading. And the fact that upon such inquiry it may ascertain and provide lesser awards as alimony than the contract stipulates in no way mitigates against its right and duty to make the inquiry. Indeed, in reducing the amount of alimony installments stipulated in the contract the court may actually have advantaged the wife, if the husband is able to pay the lower award

fixed in the decree and not the higher one stipulated in the contract.

"We think a fair appraisal of the settlement contract as a whole leaves little doubt that the payments in favor of the wife provided for in the contract were in discharge of the husband's obligation to support and maintain her and, hence, were in lieu of alimony."

The agreement attached to plaintiff's complaint in the case now being considered does not use the term alimony at any place but it provides for the conditional support and maintenance of the plaintiff.

The conditions under which the wife was to receive support and maintenance payments from the husband were as follows: (1) In the event of a divorce being granted to either of the parties and the subsequent remarriage of either party the payments should immediately cease; (2) in the event of the retirement of the husband from active military service the payments should cease; failing either of these contingencies the payments would be made by the husband as long as both parties remained alive.

If under the terms of this agreement the court is without power to modify the allowance for support and maintenance of the wife then it would seem that the petition in the case on its face discloses the fact that the husband is no longer liable to the wife for any amount of money for support and maintenance. The petition alleges that the husband retired from active military service and is now engaged in work from which he receives about three times his base receipts as an army officer.

What inducement the wife had for agreeing that in case a divorce should be granted to either of the parties the husband would have no further obligation for her support and maintenance if he should remarry after the decree of divorce, is not made clear by the terms of the agreement.

We are of the opinion that the provision for support and maintenance, alimony, are severable from the provisions regarding property rights of the parties, if any, as stated in the agreement.

The defendant has submitted, as he did doubtless to the district court, a number of cases from California and other jurisdictions holding that the contract voluntarily entered into by the parties is not subject to change by the court as to either property settlement or as to alimony. Defendant asserts and has respectable authority to support his assertion that the agreement entered into by the parties in this case is a property settlement agreement with provisions, as a part thereof, for support and maintenance of the wife and so it is not in the control of the court. We think that the contract in this case differs somewhat from

any of the contracts passed on in the cases supporting the defendant's contention. As we have pointed out, the paragraphs in the agreement in the case at bar which deal with support and maintenance of the wife contain no provision showing that the stated settlement of property rights between the parties would have been any different if the provisions for support and maintenance had not been made. It is not shown in the agreement that the small amount allowed for the support and maintenance of the plaintiff was determined out of any consideration of the value of any property that she or her husband may have received under the terms of the contract. Indeed, it is not shown by the terms of the contract that either of them has actually received anything in the way of property. It does not appear that either actually owned anything whether separate or community. A number of paragraphs having to do with property and property rights appear in their contract, but not a sentence in the entire agreement shows actual ownership by the parties of any community property or by either of them of any separate property.

The Supreme Court of California has been called upon many times to deal with the question of the right of the court to modify both interlocutory and final decrees as to alimony in cases in which settlement agreements have been made by the parties and have been approved and confirmed or adopted in the decree or in which directions following the provisions of the settlement agreement were stated in the decree. The plaintiff in this case relies strongly upon Hough v. Hough, 26 Cal.2d 605, 160 P. 2d 15.

In this case plaintiff instituted suit for divorce. Thereafter the parties entered into an agreement providing for settlement of their property rights. Community property, consisting principally of a going concern, was valued at seventy-five thousand dollars. The agreement provided that defendant would pay plaintiff thirty-five thousand dollars and transfer to her other items of community property. The agreement provided that plaintiff was to have custody of the two minor children of the parties and that defendant was to pay plaintiff two hundred dollars a month for her support during her life or as long as she remained unmarried, and in the case of her remarriage monthly alimony payments should cease. Defendant also agreed to pay fifty dollars and seventy-five dollars for the support of the two children, as stated in the agreement. After the agreement was made the court awarded custody of the children to the plaintiff, granted an interlocutory decree of divorce to the plaintiff, provided for the support of the children, ordered the payments to be made to the

wife, the plaintiff, in the sum of thirty-five thousand dollars, and also provided that payment should be made to her of two hundred dollars per month "for her own support and maintenance beginning September 1, 1927 and to continue during her lifetime unless she remarries."

The interlocutory decree recited that it was made as to the provisions above stated in accordance with the settlement agreement and that the settlement agreement was approved by the court. The final decree entered in 1928 adopted the terms of the interlocutory decree.

Defendant complied with the terms of the decree, except in some items not of particular importance, until 1934. At that time he applied for modification of the decree with respect to the two hundred dollars monthly payments to the plaintiff and asked release of the support of one child who had become emancipated. He also asked for reduction of the support payments for the other child. He based his application upon a change of circumstances, claiming financial losses had embarrassed him at the time. Plaintiff countered with affidavits seeking to have defendant held in contempt of court for not paying the full amount for the preceding year and also filed an affidavit seeking an increase of the alimony payments. Plaintiff's objection at the hearing was on the ground that the court had no jurisdiction to modify a provision of a property settlement agreement as to support of plaintiff.

The court found that the defendant had paid only one hundred dollars a month for support for about a year and was in arrears twelve hundred dollars but that the contempt had not been willful. The court ordered that the arrearages should be paid at the rate of fifty dollars a month until fully paid and that the support of the plaintiff should be reduced to one hundred dollars a month beginning on the first day of June 1934 or further order of the court or until the plaintiff should remarry.

In 1942 plaintiff commenced an action on the agreement to recover the difference between the monthly payments and the amount allowed by the court in the modified decree. Defendant pleaded the order of modification as res adjudicata. This is the action recited above in 160 P.2d 15. The court gave judgment for the plaintiff finding that the contract was a property settlement agreement wherein the parties agreed on the settlement of their property rights arising out of their marital relation and plaintiff submitted such property settlement agreement to the court in said divorce proceedings for its approval and the same was approved and fully adjudicated and determined all rights arising from the contract. The court, in the Hough case, held that an agreement of the parties presented to the court in a divorce proceeding for

approval, when incorporated in the decree and made a part thereof, is merged in the decree. The court cited many cases which support this doctrine, among others, Holloway v. Holloway, 130 Ohio St. 214, 215, 198 N.E. 579, 580, 154 A.L.R. 439. In the Holloway case the court said:

> "* * * A decree is valid as such regardless upon what it may be grounded. There is nothing in the law to render a decree invalid or ineffectual merely because it is predicated upon an agreement of separation, which agreement is incorporated bodily in the decree. A decree which incorporates an agreement is a decree of court nevertheless, and as soon as incorporated into the decree the separation agreement is superseded by the decree, and the obligations imposed are not those imposed by contract, but are those imposed by decree, and enforceable as such. Once the contract is merged into the decree, the value attaching to the separation agreement is only historical."

The only changes made in the original decree were made by the trial court upon the application of the husband for modification with the resulting changes. In the wife's suit on the contract, the reported case, the husband's plea of res adjudicata was sustained. The court, in sustaining the plea, held that the agreement was merged in the final decree of divorce and that suit could not be brought on the contract. The lower court hearing the wife's case had allowed her a recovery. The judgment was reversed upon the doctrines above stated.

Other cases in line with the Hough case are as follows: Gillespie v. Gillespie, 74 Ariz. 1, 242 P.2d 837; Callister v. Callister, 1 Utah 2d 34, 261 P.2d 944; Buchler v. Buchler, 65 Wyo. 452, 202 P.2d 670.

In the case at bar we think that the provisions for alimony are entirely severable from the provisions as to property, if any property there was or is. We also consider the separation agreement was merged in the decree of divorce and became a part thereof and that the provision for alimony is, by reason of the statute authorizing the court to modify provision for alimony at any time, subject to change.

Defendant, in attempting to refute the doctrine of the Hough case, cites three California cases, all decided in January of 1954.

In the first of these cases, Flynn v. Flynn, 42 Cal.2d 55, 265 P.2d 865, at page 867, 868, the Supreme Court of California says:

> "* * * examination of the property settlement incorporated by reference in the interlocutory decree makes clear that it is an integrated bargain of the type considered in Dexter v. Dex-

ter, [42 Cal.2d 36] 265 P.2d 873, and Fox v. Fox, [42 Cal.2d 49] 265 P.2d 881. * * *"

In the Dexter case, 42 Cal.2d 36, 265 P.2d 873 at pages 876–877 the court says:

"* * * When, as in this case, * * * the parties have made the provision for support and maintenance an integral part of their property settlement agreement, the monthly payments will ordinarily have a dual character. To the extent that they are designed to discharge the obligation of support and maintenance they will ordinarily reflect the characteristics of that obligation and thus have the indicia of alimony. (Citing cases.) On the other hand, to the extent that they represent a division of the community property itself, or constitute an inseparable part of the consideration for the property settlement, they are not alimony, and accordingly cannot be modified without changing the terms of the property settlement agreement of the parties. * * *"

In reaching the conclusion in the case of Fox v. Fox, 42 Cal.2d 49, 265 P.2d 881, at page 883, that the monthly payments were at least partially in consideration of the transfer of property, the court says:

"* * * the provision in this case lends support to the conclusion that at least part of the payments constituted a division of property as such. Thus in no event were the payments to fall below $200 per month, and they were to cease on a fixed date without reference to plaintiff's needs or defendant's ability to pay after that time."

In Ferret v. Ferret, supra, this court in affirming the lower court in the holding that it was not bound by the provisions of the settlement agreement of the parties as to the obligation of the first party (the husband) for the support of the second party (the wife), had in consideration the preamble to the contract which recited the desire of the parties to adjust their property rights and claims of whatever nature against each other as well as to provide support for the wife. The court further considered the proviso in the contract which limited the payments provided therein to the period that the wife (plaintiff) remained single, saying [55 N.M. 565, 237 P.2d 599]:

"* * * it is difficult to avoid the conclusion that the payments are in fact as for alimony and intended so to be."

In the case at bar it seems that the same reasoning compels the same conclusion because in this case not only has the wife by the agreement been cut off from support by her husband in case of her remarriage, but she is cut off from support in case of the remarriage of her husband and, in addition, is cut off from support in case

the husband ceases to be an army officer. Other cases cited and relied upon by defendant are as follows: Bart v. Bart, 182 Md. 477, 35 A.2d 125; Heckman v. Heckman, D.C., 83 F.Supp. 687; Millheisler v. Millheisler, 43 Wash.2d 282, 261 P.2d 69; Turner v. Ewald, 290 Ky. 833, 162 S.W.2d 181; none of these cases convinces us that we should take any view of the situation before the court other than has been indicated above.

This court is doing, as we think, what would be done in New York under their statute, supra.

■ We think the provisions of the contract which would cut the plaintiff off without support from her former husband in the case of his remarriage though she remained single, or in the case of his change of occupation, are void as contrary to public policy. We take from 39 Michigan Law Review at 128 the following, which was cited approvingly by the California court in the Hough case (supra):

"* * * Assuming that the court has the power by statute to modify a decree not based on contract, it would seem that in the view of most courts there is no sufficient reason to take the decree based on contract out of the operation of the statute as to the alimony provisions. That the interest of the state in the marital status and the dissolution thereof is sufficient reason to

support such a view hardly seems to require demonstration."

As far as we have been able to ascertain the Hough case has not been overruled in the state of California. Its facts distinguish it from the later California cases and in no one of those was it repudiated.

■ There is a conflict between provisions of the decree as it stood when entered for the reason that the agreement of the parties provided there should be no modification of the terms of the agreement except by the written consent of both parties. The statute of the state of New Mexico provided, however, that the court might at any time modify or change the provisions of decrees of divorce as to alimony or money for the support and maintenance of the wife. The statute is controlling.

Whether changed circumstances require a modification of the decree as to support money for the wife depends upon evidence as to change of circumstances.

We conclude that the judgment of the lower court must be reversed and the case remanded with directions to overrule the motion for dismissal of plaintiff's petition and to proceed with the case in due course.

It is so ordered.

COMPTON, C. J., and LUJAN, SADLER and McGHEE, JJ., concur.

Rehearing denied; McGHEE, J., dissenting.