594 P.2d 1167

**James BRISTER, Plaintiff-Appellant,**

v.

**Wyona BRISTER, Defendant-Appellee.**

**No. 11892.**

Supreme Court of New Mexico.

May 14, 1979.

Fred M. Calkins, Albuquerque, for appellant.

Houston, Housman, Freeman & Dawe, R. Thomas Dawe, Albuquerque, for appellee.

OPINION

EASLEY, Justice.

Wyona Brister filed a motion for an increase in alimony against her ex-husband, James Brister. Brister filed a counterclaim to terminate or substantially reduce alimony. The court increased the alimony and denied Brister's requested relief. Brister appeals. We reverse.

We inquire:

1. Whether the court may disregard a stipulated agreement for alimony which was incorporated in the original divorce decree and change the amount to be paid.

2. Whether the provision as to alimony was a part of the community property division instead of support.

3. Whether a former decision on a similar motion was res judicata against Brister, the movant, where the district court ruled that alimony payments would not be reduced or terminated because of Brister's sole claim that Mrs. Brister had established a "de facto" marriage with another man.

4. Whether support from a paramour, living with Mrs. Brister as her husband, may be considered on the issue of changed financial circumstances in deciding Brister's right to reduction or termination of alimony.

5. Whether alimony should have been prospectively reduced or terminated under the circumstances, in light of the fact that Roof, the paramour, and Mrs. Brister had terminated their relationship before the date of the hearing.

6. Whether Brister is entitled to claim a retroactive reduction or termination of alimony during the period Mrs. Brister was receiving support from her lover.

The divorce decree incorporated an agreement which provided alimony to Mrs. Brister until her death or remarriage.

Brister previously filed a motion on December 8, 1976 to terminate alimony on the grounds that Mrs. Brister had been living with James H. Roof in California for more than a year and had been holding herself out as his wife. Brister claimed that Cal.

Civ.Code § 4801.5 (West) (Supp.1979) provides that the act of Mrs. Brister warranted cancellation of the alimony award, and that the trial court should apply the California law. The evidence submitted was fairly conclusive that Mrs. Brister was holding herself out to be the wife of Roof, and had lived with him as alleged. There was no issue raised in the record on the 1976 motion as to Mrs. Brister's *need* for alimony. The trial court held on that motion that, even though Mrs. Brister was living in a common-law relationship with another man, this was not a basis for modification of an alimony award.

As to the instant motion, Brister filed a counterclaim asking for reduction or termination of alimony based on Mrs. Brister's changed circumstances in that Roof was providing for her support. The court found that there was no proof of a change in circumstances warranting reduction or termination of alimony, that the alimony agreement was in the nature of a community property distribution, that Mrs. Brister should be allowed additional alimony, and that relief would be denied to Brister.

*Effect of Stipulated Settlement*

■ The public policy on modification of alimony awards is established by § 40-4-7(B)(2), N.M.S.A.1978, which gives the district court the authority to change any order with respect to alimony allowed to either spouse "whenever the circumstances render such change proper". The court may disregard the agreement and make an award that the court deems fair. *Scanlon v. Scanlon*, 60 N.M. 43, 287 P.2d 238 (1955). In *Scanlon*, this court held that the above statute becomes a part of any agreement for alimony and that the contract for alimony that is incorporated in a decree becomes merged and thus subject to equitable modification, even when it contains a provision that the agreement cannot be amended without the consent of both parties. *See Spingola v. Spingola*, 91 N.M. 737, 580 P.2d 958 (1978).

The trial court having general power to modify this decree for alimony, the exercise

of that power is not affected under these circumstances by the fact that the decree is based on an agreement entered into by the parties to the action. We hold that the trial court erred on this issue.

*Alimony or Community Property Division?*

■ The trial court erroneously held that the payments made to Mrs. Brister were in the nature of a distribution of community property instead of being alimony, and thus, the payments were not subject to modification.

The stipulated agreement specifically distinguished between the property division and support, recognized the obligation of Brister to provide support for Mrs. Brister, acknowledged the court's continuing jurisdiction to alter the amount of alimony, provided an elaborate means by which the amount could be increased or decreased because of inflation or deflation, and specified that alimony would terminate upon the death or marriage of Mrs. Brister or the death of Brister. There was no language in the contract from which it could be determined that any consideration was given to the value of any property that was divided in determining the amount allowed for support, nor was there any provision indicating that the settlement of property rights would have been any different if the grant of alimony had not been made. The decree by its terms separated alimony from property distribution and incorporated the settlement agreement. There were no findings made by the court based on evidence, other than the contract, which would support a holding that the parties had intended to and did agree that the payments were in lieu of property distribution.

This issue has previously been settled in *Scanlon, supra,* where this Court held that the provisions regarding alimony were entirely severable from the provisions as to property. The same is true here. In *Ferret v. Ferret,* 55 N.M. 565, 237 P.2d 594 (1951), this Court was considering an almost identical set of facts and attached significance to the fact that the contract recited that it was executed to settle any claims, including the obligation of the husband to support the wife, and that the payments would be limited to the period that the wife should remain single. "[I]t is difficult to avoid the conclusion that the payments are in fact as for alimony and intended so to be." *Id.* at 574, 237 P.2d at 599.

The decree is clear and unambiguous. It stands and is enforced as it speaks. *Parks v. Parks,* 91 N.M. 369, 574 P.2d 588 (1978); *Chavez v. Chavez,* 82 N.M. 624, 485 P.2d 735 (1971).

*Res Judicata*

■ Mrs. Brister claims, and the trial court so found, that the same issues that were before the court in the instant motion were decided by the court in ruling on the December 1976 motion and thus are barred by the doctrine of res judicata. We do not agree. The thrust of Brister's December 1976 motion was to show that Mrs. Brister was living with Roof and holding herself out as his wife and that, under California law, Brister had the right to cancellation of alimony. The record does not reflect that the issue of Mrs. Brister's need for alimony was litigated. Mrs. Brister's need is the key question in the present proceeding and not the application of California law as in the prior proceeding.

■ Authority to modify an alimony award depends on the law of the jurisdiction which granted the award. *See Hazelwood v. Hazelwood,* 89 N.M. 659, 556 P.2d 345 (1976); *Corliss v. Corliss,* 89 N.M. 235, 549 P.2d 1070 (1976). We hold that the California statutory law, which does not comport with our statutes or case law, cannot be invoked to control a modification of a New Mexico divorce decree in a subsequent action in the same court that granted the decree, where at least one of the parties was still a New Mexico resident.

The evidence bearing on the application of the doctrine of res judicata does not meet the classic test given in *Lindauer Mercantile Co. v. Boyd,* 11 N.M. 464, 70 P. 568 (1902), because there is no identity of sub-

ject matter as respects the two proceedings. The trial court was in error on this point.

### Support from a Cohabiting Male

██ This Court has not decided the issue as to whether support, furnished by a person who is cohabiting as husband and wife with the recipient of alimony, may be considered as a factor in determining the need for alimony. Alimony, which literally means nourishment or sustenance, is support for one spouse by another as a substitute for the statutory right to marital support during coverture. *Chavez, supra.* It is not intended as a penalty against a husband. *Richards v. Richards*, 44 Haw. 491, 355 P.2d 188 (1960); *Bouma v. Bouma*, 439 P.2d 198 (Okla.1968). Alimony is a personal right as opposed to a property right. *McClure v. McClure*, 90 N.M. 23, 559 P.2d 400 (1976); *Burnside v. Burnside*, 85 N.M. 517, 514 P.2d 36 (1973).

██ There is no fixed rule by which the amount of alimony can be determined. Each case depends upon its relevant facts in the light of what is fair and reasonable. *Sloan v. Sloan*, 77 N.M. 632, 426 P.2d 780 (1967). Changes in circumstances of divorced parties may warrant reducing or terminating alimony obligations. *McClure, supra.* A number of important factors must be considered in determining the sufficiency of alimony payments, such as the needs of the wife, her age, health and means to support herself, the earning capacity and the future earning capacity of the husband, the duration of the marriage, and the amount of the property owned by the parties. *Michelson v. Michelson*, 86 N.M. 107, 520 P.2d 263 (1974). If the recipient becomes able to support herself after the passage of a period of time, this constitutes a change in circumstances that has been held to warrant termination of the husband's alimony obligation. *McClure, supra.*

The focal point in each case is the recipient's need for support. We consider Mrs. Brister's salary and the income from her property under present case law. Actual need being the criterion, what matters if the money comes from an inheritance, a crap game or the largess of a live-in lover. We hold that this additional resource of Mrs. Brister's may be weighed in determining the amount of alimony that should be paid. We do not consider this ruling to be at odds with *Hazelwood, supra*, which case we read to hold that a so-called "de facto" marriage is not, *in and of itself*, grounds for cancellation of an alimony award.

### Prospective Reduction or Termination

██ The decree specified that alimony be terminated on the death or marriage of Mrs. Brister. Neither contingency has occurred. She was not receiving any part of her support from Roof at the time of the hearing, and there was no showing that she would in the future, because the couple had separated. Thus, no grounds existed for prospective reduction or cancellation of alimony payments.

### Retroactive Reduction, Setoff or Termination

The court granted an increase in alimony from the $200 awarded in the decree to $296.86. This figure was arrived at by stipulation of the parties and reflected the escalation in the cost of living since the decree was entered.

Under our view, if Mrs. Brister's need was reduced by Roof's contribution, Brister may be entitled to a retroactive reduction and setoff, depending upon the facts. However, although there was a considerable amount of controversy over the amount of money that Mrs. Brister was earning and receiving from all sources during the time of her cohabitation with Roof, the court did not find the level of Mrs. Brister's *need* during that time. Absent such a finding of a particular amount needed to support Mrs. Brister, there is no figure to which a comparison may be made with the dollar amount of support she actually received. The trial court found that the stipulated settlement provided "the only grounds available . . . for termination of alimony". The trial court, therefore, did not consider the evidence of changed circumstances relating to the support allegedly

provided to Mrs. Brister by Roof. Findings on this issue, predicated upon the law we have here announced, are material to final disposition.

We remand so that the trial court may consider the evidence, in the light of our opinion, to determine if a retroactive reduction or setoff is warranted, and to dispose of the other issues in accordance with this opinion.

IT IS SO ORDERED.

McMANUS, Senior Justice and PAYNE, J., concur.