**LETCHER COUNTY, KY., et al. v. DE FOE.**

No. 10031.

Circuit Court of Appeals, Sixth Circuit.

Dec. 4, 1945.

E. A. Woodward, of Louisville, Ky. (Thomas S. Dawson, of Louisville, Ky., J. L. Hays, of Whitesburg, Ky., and Roy W. House and Woodward, Dawson, Hobson & Fulton, all of Louisville, Ky., on the brief), for appellants.

Henry. E. McElwain, Jr., of Louisville, Ky. (Allen, McElwain, Dinning & Clarke, of Louisville, Ky., on the brief), for appellee.

Before SIMONS, ALLEN, and McALLISTER, Circuit Judges.

SIMONS, Circuit Judge.

The appeal concerns itself with the status of defaulted and detached interest coupons of bonds of the county deposited in pursuance of a refunding plan, the coupons having been reduced to judgment prior to the inception of the plan. The problem was presented to the District Court by the bondholder and judgment creditor, in a petition for a declaration of his right to have the judgments satisfied by the county in their full amount. He prevailed and the county and local finance officer appealed.

The appellee was the owner of certain road and bridge bonds of the county, some of which, upon becoming due, were unpaid. The interest coupons on such bonds, together with interest coupons on unmatured bonds, likewise owned by the appellee, were also past due and unpaid. On September 30, 1939, and again on June 9, 1941, the bondholder obtained judgments on such coupons in the District Court in the respective amounts of $6,241.17 and $21,955.50. Pursuant to an order in each case the interest coupons were stamped "reduced to judgment," and filed with the clerk of the court to be retained in his custody. Both judgments remained unsatisfied, except for certain partial payments which were made without specific application to either of the judgments and without prejudice to the rights of either the plaintiff or the county.

On August 13, 1940, the county, finding itself embarrassed by statutory limitations upon its taxing power, in meeting maturing bonded indebtedness and current interest thereon, entered into a refunding agreement with a bondholders committee. The agreement provided that subject to approval of the state local finance officer, the county would issue refunding bonds for the purpose of refunding an indebtedness "represented by judgments or otherwise," consisting of $684,000 of 5% road and bridge bonds issued in 1921, 1922, 1924 and 1925, with interest thereon to April 1, 1940. A portion of such outstanding bonds and coupons were then past due and in default, and some of the bonds and coupons had been reduced to judgment. The refunding bonds were to be dated April 1, 1940, to mature in 30 years, and to bear interest at the rate of 2½% for the first 10 years and 3% thereafter. The agreement provided that interest accrued and not represented by coupons should be paid at the rate of 2%; that coupons were to be deposited with the exchange agent who would deliver to the depositor a sum equivalent to 40% of the face amount of coupons deposited in full settlement of the depositor's interest in such coupons; that when the refunding bonds should be ready for delivery they would be deposited with the

state local finance officer as the exchange agent. The plan was not to be declared operative by the committee until the holders of at least 75% of the principal amount of outstanding road and bridge bonds had agreed to its terms.

On October 16, 1941, the Fiscal Court of the county adopted and approved the necessary order to refund the bond indebtedness in accordance with the terms of the plan. It provided for the levy and collection of an annual tax for the payment of the refunding bonds, and recited that it was "for the purpose of refunding a like amount of the indebtedness described in the preamble hereof and any judgments heretofore or hereafter recovered thereon." The refunding plan was approved by the state local finance officer on June 20, 1942. On July 1 of that year, the bondholders committee addressed a letter to all the holders of road and bridge bonds, containing an analysis of the refunding plan, a recital that the state local finance officer had approved it, that interest accrued to April 1, 1940, on the indebtedness to be refunded, would be paid at the reduced rate of 2% at the time of the exchange of the bonds, and that the plan might be declared operative when accepted by the holders of 75% of the outstanding bonds. With this letter there was sent to each holder of bonds, a form "letter of transmittal" to be used by the bondholder in forwarding his bonds for exchange, which, when signed by the bondholder, was to constitute his acceptance of the refunding plan. The letter also cautioned that "the bonds must be accompanied by all unpaid and partially paid coupons."

The committee and the county officers found difficulty in obtaining the consent to the refunding plan of the holders of 75% of the outstanding bonds. The appellee, along with certain other bondholders, at first refused to accept the plan or to deposit their bonds for exchange. There followed a number of conferences between the committee and the appellee, as a result of which the appellee agreed to deposit with the exchange agent, a sufficient number of bonds to bring the amount of bonds deposited up to the required 75% of the total outstanding. On November 2, 1942, the appellee deposited bonds in the face amount of $82,000. The total deposits still being short of 75% of the outstanding bonds, the appellee subsequently deposited an additional $24,000 of bonds so that the plan might become operative.

When the appellee made his deposits he did not use the transmittal letter sent by the committee to the bondholders, but accompanied his deposit with a special deposit agreement, which recited that the bonds were deposited for exchange under the refunding plan proposed by the committee as set out in its contract with the county, summarized in the committee's letter to the bondholders, and as authorized by resolution of the Fiscal Court and approved by the order of the state local finance officer, the county debt commission and the Franklin Circuit Court, but was made subject to a number of conditions. None of the conditions referred to the payment of interest on defaulted coupons reduced to judgment, or to the judgments.

These special deposit agreements were accepted by the committee and the state local finance officer. The conditions therein contained were agreed to and the bonds accepted with the understanding that upon failure to comply with any of the conditions, the bonds would be returned upon demand. When the bonds were checked by the state local finance officer, it was found that coupons on $30,000 of bonds deposited covering interest accrued between 1938 and 1941, were not attached to the bonds. The finance officer thereupon wrote to the appellee's agent asking for an explanation. This letter, printed in the margin,[1] becomes important because of the concern

---

[1] "November 23, 1942.
"Mr. Edward H. Dahly
Graybar Building
420 Lexington Avenue
New York, New York

Dear Mr. Dahly:

I notice that $30,000 of the $87,000 of Letcher County bonds which you sent to me, have only the October 15, 1941, and subsequent coupons attached. I am under the impression that no interest on any of the bonds has been paid beyond the spring of 1938. This is true of all the other bonds which have been deposited with me.

I am wondering if you can provide me with any explanation of the singular coupon position of these thirty bonds. I am concerned lest the coupons thus unaccounted for, may be in the hands of some person who will later make demand for their payment at their full face amount.

Very truly yours,
(signed) Harry R. Lynn,
HDL:dw    State Local Finance Officer."

therein expressed that the coupons might be in the hands of persons who would later make demand for payment at their full face amount, and the response of the agent, likewise printed in the margin,[2] is equally important because of the reference therein that the coupons were part of the DeFoe judgments and therefore not properly a part of the bonds.

The court rightly concluded that the respective rights of the parties must be determined by the voluntary contracts into which they entered at the time the bonds were solicited and deposited. It concluded, however, that the detached coupons, which had been reduced to judgment, were not included in the refunding plan, and this conclusion is based upon an interpretation put upon the subsequent correspondence between the parties in respect to the missing coupons.

There was no factual controversy and no challenge to the evidentiary findings of the court. The evidence consisted entirely of written instruments and other writings which a reviewing court is competent to interpret, and is not precluded from doing so by Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. It remains free to draw the ultimate inferences and conclusions which evidentiary findings reasonably induce. Kuhn v. Princess Lida of Thurn & Taxis, 3 Cir., 119 F.2d 704; Reinstine v. Rosenfield, 7 Cir., 111 F.2d 892. Indeed, it is the duty of the reviewing court to review the evidence in order to determine whether decision below was or was not clearly erroneous, and that duty becomes the more imperative where the trial court has had no occasion to observe witnesses or to judge of their credibility in arriving at a factual basis for decision.

In reviewing the record it becomes clear that the refunding plan contemplated the refunding of the county's indebtedness by reason of its road and bridge bonds, whether matured or unmatured, and whether "represented by judgments or otherwise." Interest coupons represented part of this indebtedness. The order of the Fiscal Court approving the refunding plan, recited that it was for the purpose of refunding an indebtedness described in its preamble, and "any judgments heretofore or hereafter recovered thereon." The bondholders committee letter clearly recited that interest at the reduced rate of 2% at the time of the exchange of bonds would be paid, and that the bonds must be accompanied by all unpaid and partially paid coupons. The special deposit agreements, whatever else their conditions, made no reservation in respect to reduced interest on deposited bonds, as provided in the plan or the order approving it. It must be concluded, therefore, that the appellee deposited his bonds in conformity with the terms of the plan in all respects other than as modified by his conditions. So much the court appears to have conceded.

Decision was based, however, upon the subsequent correspondence between the local finance officer and the appellee's agent. Whether this was interpreted as a supplemental agreement further modifying the plan, or as a practical construction of the parties relied on to clarify some ambiguity in the special deposit agreements, is not made clear to us, but in either case we are unable to interpret this correspondence as indicating that the appellee's bonds were accepted for deposit upon an understanding that the deposit agreements, or modifications thereof, contemplated that the appellee would receive the contract interest upon the coupons reduced to judgment.

The finance agent's inquiry of November 23, expressed concern that the undeposited coupons might be in the hands of some person "who will later make demand for their payment at their full face amount." They were negotiable instruments and, if in the hands of persons other than depositing bondholders, might jeopardize the refunding plan. The reply satisfied him that they were not so held, that the reason they were not deposited was because they could not be deposited since they were part of the DeFoe judgment. The reply, however, read, in referring to

---

2    "November 25, 1942.

"Re: Letcher County Refunding

Mr. Harry R. Lynn, State Local Finance
    Officer

Department of Revenue

Frankfort, Kentucky

Dear Mr. Lynn:

Answering your letter of November 23rd.

The unpaid and detached coupons in question are a part of the Frederick W. DeFoe judgment and are not, therefore, properly a part of these bonds.

Sincerely yours,

EHR:RR    (signed) Edward H. Dahly."

the coupons, that they "are not therefore properly a part of these bonds." Literally, that was true. They had been detached from the bonds and were in the custody of the clerk of the court. There was nothing in this statement that would apprise the local finance agent or the bondholders committee, that 5% interest would be claimed on such coupons by the owners of deposited bonds. It is urged, and the court so found, that the recited phrase meant that the coupons were not part of the plan. The language does not so indicate.

█ It has been an invariable rule, based upon equitable principles, that all persons in the same status, entitled to share in the distribution of a fund, are on a parity, entitled to a pro-rata share of such fund as their interests may appear, and no more. This principle governs all statutes of distribution, the liquidation of bankruptcy or insolvent estates, the estates of deceased persons, and refunding arrangements whether governed by law or private agreements. Equity knows no other basis of distribution. The inference is inescapable that had the special deposit agreement been understood, or been thought capable of being understood so as to give the appellee 5% interest on his undeposited coupons while other depositors received reduced interest, the bondholders committee would never have declared the plan operative, the local finance agent would not have endorsed it, the Fiscal Court would not have approved it, and the other depositing bondholders would have withdrawn their bonds.

█ But it is urged that the debt represented by the coupons was merged in the judgments, and so the interest coupons no longer represented any debt that was to be refunded. Moreover, since the terms of the plan required that the bonds must be accompanied by all unpaid and partially paid coupons, the acceptance of bonds without such coupons relieved the depositing bondholders from the obligation to accept the reduced rate of interest. The latter is clearly a non sequitur. The provision for the deposit of coupons was for the protection of the committee and the county. It created no right in the bondholder. When it was ascertained that they could not fall into the hands of innocent third persons, protection was no longer necessary.

█ While one effect of a judgment is to merge therein the cause of action on which the action is brought, the doctrine of merger may be carried no further than the ends of justice require. 30 Am.Jur. § 150 et seq. It is related to the principle of res judicata which precludes the relitigation of the same cause of action. It proceeds upon the principle that a superior right covers an inferior right. However, the merger of a cause of action in a judgment does not mean an annihilation and discharge of the debt so as to preclude an examination of its character or nature for all purposes. The foundation of a cause of action is not changed by recovering judgment upon it, and merger in the judgment does not preclude a court from ascertaining whether the claim is really one of a nature such as the court is authorized to enforce. 30 Am.Jur. § 158. When justice and equity require, the judgment will be construed as a new form of the old debt. Cutler Hardware Co. v. Hacker, 8 Cir., 238 F. 146; Byram v. Miner et al., 8 Cir., 47 F.2d 112. This aspect of merger is recognized by the courts of Kentucky. The Maccabees et al. v. City of Ashland, 270 Ky. 86, 109 S.W.2d 29. See also Batten v. Lowther, 74 W.Va. 167, 168, 81 S. E. 821; Gilchrist v. Cotton, 83 Ind.App. 415, 148 N.E. 435, 928; Clark v. Rowling, 3 N.Y. 216, 53 Am.Dec. 290; Boynton v. Ball, 121 U.S. 457, 7 S.Ct. 981, 30 L.Ed. 985. We conclude, therefore, that the interest coupons reduced to judgment are, both by the express terms of the refunding plan and the power of the court to consider the precise nature of the debt upon which the judgment was founded, within the terms of the refunding agreement to which the appellee subjected his bonds by depositing them with the exchange agent.

The judgment is reversed and the cause remanded for further proceedings in conformity herewith.