2001-NMCA-012

21 P.3d 37

James W. OTTINO, Petitioner–Appellee,

v.

Dana D. OTTINO, Respondent–Appellant.

Amanda J. Ottino and Dana D. Winters (formerly Ottino), Petitioners–Appellants,

v.

James W. Ottino, Respondent–Appellee.

No. 20,153.

Court of Appeals of New Mexico.

April 28, 2000.

Certiorari Granted, No. 26,827, March 23, 2001.

Steven L. Tucker, Tucker Law Firm, P.C., Santa Fe, NM, for Appellants.

Stephen J. Rhoades, Thompson, Kushner & Rhoades Llp, Albuquerque, NM, for Appellee.

## OPINION

ARMIJO, Judge.

{1} In this appeal, we are asked to determine the district court's authority, when sitting as a family court, to enforce that portion of a marriage settlement agreement which provides for post-minority child support of an emancipated child. This appeal implicates two questions. The central question concerns the effect NMSA 1978, § 40-4-7 (1901, as amended through 1993) has on the district court's original jurisdiction. For the reasons explained below, we conclude that the parties' agreement to provide for post-minority support is enforceable. We reverse and remand the decision of the district court, concluding that it can enforce the contested provision in contract.

## FACTUAL AND PROCEDURAL BACKGROUND

{2} James Ottino and Dana Ottino (now Dana Winters) married in July 1984. At the time of their wedding, Dana's daughter, Amanda, was five years of age. In 1987, James adopted Amanda, assuming parental rights and obligations as to her support. In 1990, James petitioned for divorce, and he and Dana shortly thereafter entered into a "Stipulation and Property Settlement Agreement," or marriage settlement agreement (MSA). The MSA provided for the distribution of community assets, as well as for James' payments for Dana's and Amanda's support. The MSA also provided that Dana and James would split equally the costs of Amanda's college education:

> 7. Petitioner [James] is deemed to be contractually bound to assist with the college education of AMANDA J. OTTINO. The term "assist" contemplates that he will be obligated to pay an amount equal to fifty percent (50%) of the cost of education of said child as an in[-]state resident in a New Mexico public college or university. The obligation for such assistance shall terminate at the bachelors [sic] degree level.

{3} Amanda graduated high school in 1997 and attended her first year of college at New Mexico Junior College, as an in-state resident, during the 1997-1998 academic year. James since refused to pay any amount to offset the costs of Amanda's college education.

{4} In 1998, Dana and Amanda filed suit in the District Court of Lea County, seeking to enforce what they claim to be James' contractual obligation to pay half of Amanda's education-related expenses. James moved the district court to dismiss the action, however, arguing that jurisdiction over the matter "rests exclusively within the subject matter, [sic] jurisdiction and venue to the Second Judicial District." That court granted James' motion. Dana and Amanda did not appeal this ruling; instead, they filed a new action in the District Court for the Second Judicial District. Dana sued on her own behalf, as a party to the contract; Amanda sued as a third-party beneficiary of the contract. Here, too, James challenged the jurisdiction of the court, arguing that the Second District had no jurisdiction to enforce a divorce decree that provided post-minority support, that is, support to be paid on Amanda's behalf subsequent to her emancipation at eighteen years of age. James prevailed;

Dana and Amanda now appeal from the second dismissal of their action against James.

## DISCUSSION

■ {5} Under the relevant statute in effect at the time of the entry of the divorce decree between James and Dana, the district court could, as a general matter, only order child support attendant to a divorce decree "so long as the children remain[ed] minors." Section 40-4-7(F) (1993); *Christiansen v. Christiansen,* 100 N.M. 102, 104, 666 P.2d 781, 783 (1983).[1] However, in addition to its statutory authority, the district court possesses the separate and constitutionally vested authority to enforce contracts. *See Marchman v. NCNB Texas Nat'l Bank,* 120 N.M. 74, 84, 898 P.2d 709, 719 (1995). The litigants' dispute, then, presents two issues pertaining to the district court's authority to enforce the provision at issue in this appeal. First, does Section 40-4-7 preclude the court from enforcing a contract between the parents as to the provision of post-minority child support? Second, has the underlying agreement so merged with the final divorce decree that the contractual nature of the post-minority support provision of the MSA has lost legal viability separate from the court's order? We discuss each question in turn.

### 1. *Section 40-4-7 and the District Court's Jurisdiction*

■ {6} Whether the district court is possessed of jurisdiction over the subject matter of a case is a question of law that we review de novo. *See Harrell v. Hayes,* 1998 NMCA 122, ¶ 11, 125 N.M. 814, 965 P.2d 933. Our district courts are courts of general jurisdiction. *See Sanchez v. Attorney Gen.,* 93 N.M. 210, 214, 598 P.2d 1170, 1174 (Ct.App. 1979). As such, they enjoy the "presumption of jurisdiction, in the absence of proof to the contrary." *Marchman,* 120 N.M. at 84, 898 P.2d at 719.

{7} Our Constitution vests adjudicative powers in the district court. It provides "[t]he district court shall have original juris-

diction in all matters and causes not excepted in this constitution, and such jurisdiction of special cases and proceedings as may be conferred by law." N.M. Const. art. VI, § 13. Thus, the district court is possessed of two forms of jurisdiction: original and statutory. The parties rest their arguments on the distinction between these two bases of jurisdiction.

{8} For example, Dana and Amanda emphasize the contractual basis of their claim for post-minority support; that is, they seek to invoke the district court's original jurisdiction to enforce the contested provision on a contract theory. *See Marchman,* 120 N.M. at 84, 898 P.2d at 719; *Sanchez,* 93 N.M. at 214, 598 P.2d at 1174 ("The 'original jurisdiction' of N.M. Const., art. VI, § 13, that is, the general jurisdiction of the district courts, covers those matters known 'to the common law and equity practice of England prior to 1776.'" (citation omitted.))

{9} James, on the other hand, asserts the statutory nature of the court's independent authority to order child support, an authority that, as we have noted, was valid under the statute's former wording only until a child reached majority. *See* § 40-4-7(F); *see also Christiansen,* 100 N.M. at 104, 666 P.2d at 783. He argues that given the statutory limitation on the district court's power to order child support incident to a divorce, a court is also without power to enforce any *contractual* agreement for post-minority support. In so arguing, he primarily relies upon *Spingola v. Spingola,* 93 N.M. 598, 600, 603 P.2d 708, 710 (1979). We are not persuaded by James' reasoning.

{10} In *Spingola,* our Supreme Court held that the district court is without jurisdiction to order, of its own authority, post-minority child support. In so holding, however, it expressly refrained from deciding the question now before this Court. *See id.* ("Whether an agreement to support can be enforced under a contractual theory is not an issue here...."). Accordingly, it is not bind-

---

1. We are bound to apply the statute in effect at the time of the divorce, *see Scanlon v. Scanlon,* 60 N.M. 43, 49, 287 P.2d 238, 242 (1955), even though it was amended in 1997 to allow district courts to "order and enforce the payment of support for the maintenance and education after high school of emancipated children of the marriage pursuant to a written agreement of the parties." Section 40-40-7(C) (1997).

ing precedent in the present case. *See Bogle Farms, Inc. v. Baca*, 1996 NMSC 051, ¶¶ 19–20, 122 N.M. 422, 925 P.2d 1184; *Zarges v. Zarges*, 79 N.M. 494, 496, 445 P.2d 97, 99 (1968).

{11} Nor are other opinions binding which merely reinforce the Court's basic holding in *Spingola;* that is, that the district court cannot order, *of its own authority,* the parties to provide post-minority child support. *See, e.g., Christiansen,* 100 N.M. at 104, 666 P.2d at 783 (reversing trial court's "ordering the parties jointly responsible for the post-minority education of their child"); *Dillard v. Dillard,* 104 N.M. 763, 766, 727 P.2d 71, 74 (Ct.App.1986) (reversing trial court's "establishing a trust which provided for the parties' children's post-minority education"). These cases did not address the court's authority to enforce *contracts* for post-minority child support; they involved the district court's *imposition* of such obligations. Indeed, this Court has enforced marriage settlement agreements, although not those dealing with post-minority child support, under a contract theory. *See Herrera v. Herrera,* 1999–NMCA–034, ¶ 9, 126 N.M. 705, 974 P.2d 675. We see no reason why a contract, if valid, for post-minority support cannot be similarly enforced.

█ {12} Nonetheless, James would have us emphasize the Court's comment in *Spingola* that parties cannot, by agreement, extend the district court's subject matter jurisdiction. *See Spingola,* 93 N.M. at 600, 603 P.2d at 710 ("We do not believe, however, that the subject matter jurisdiction of the court can be extended by agreement of the parties."). Of course, there can be no dispute regarding that basic observation of black-letter law. *See State ex rel. Overton v. New Mexico State Tax Comm'n,* 81 N.M. 28, 31, 462 P.2d 613, 616 (1969). However, such argument turns the question now before us on its head.

{13} The question in this case is not whether the parties can extend the court's jurisdiction by agreement, but whether the court has jurisdiction over an agreement of the parties, ancillary to a final divorce decree. In effect, James is arguing that the district court has no jurisdiction because

there is no contract; however, whether or not an enforceable contract exists is the precise question presented to the district court. In an analogous context, Justice Montgomery once observed:

> This Court has repeatedly noted that the jurisdiction of a district court does not depend on how the court decides a contested issue submitted to it; the test "is whether or not it had power to enter upon the inquiry; not whether its conclusion ... was right or wrong."

*Sundance Mechanical & Util. Corp. v. Atlas,* 109 N.M. 683, 687, 789 P.2d 1250, 1254 (1990) (quoting *State v. Patten,* 41 N.M. 395, 399, 69 P.2d 931, 933 (1937)). In other words, James' argument goes more to the merits of Dana's and Amanda's claim than it does to the district court's jurisdiction. *See id.* ("[Such argument] would make jurisdiction turn on the underlying validity *vel non* of a claim-the very question to be determined by the court in the exercise of its jurisdiction.").

█ {14} Accordingly, we hold that the district court has the power, arising from its original jurisdiction over matters sounding in contract, to enforce valid agreements for post-minority support. As we have already noted, the district court's original jurisdiction arises from our state's constitution. *See* N.M. Const. art. VI, § 13. Therefore, absent a constitutional amendment, the court's jurisdiction cannot be limited by the Legislature's enactment of a statute. *See* N.M. Const. art. III, § 1; *In re Guardianship of Arnall,* 94 N.M. 306, 308, 610 P.2d 193, 195 (1980) (recognizing certain statutory "interference in the original jurisdiction of a court of general jurisdiction is constitutionally impermissible"); *cf. City of Hobbs v. State ex rel. Reynolds,* 82 N.M. 102, 103–04, 476 P.2d 500, 501–02 (1970) (reinforcing holding of *Fellows v. Shultz,* 81 N.M. 496, 469 P.2d 141 (1970), that legislature's attempt to remove proceeding from jurisdiction of administrative agency to that of district courts violated separation of powers doctrine). In this light, the statutory jurisdiction vested in our district courts for the purposes of crafting and entering orders of support upon divorce ought not to be viewed as a *limitation* upon the courts' original jurisdiction, but as an augment to it.

*See State v. Segotta,* 100 N.M. 498, 500, 672 P.2d 1129, 1131 (1983) (recognizing rule that a statute is not to be construed in such a manner that renders it unconstitutional); *State v. Jim,* 107 N.M. 779, 783, 765 P.2d 195, 199 (Ct.App.1988) (same).

{15} Contrary to James' arguments, our case law identifies no reason why these separate bases of the district court's jurisdiction-original versus statutory-must operate each to the exclusion of the other. *Cf. Sundance Mechanical,* 109 N.M. at 687, 789 P.2d at 1254 (questioning whether distinction between court's subject matter jurisdiction and its authority to decide a matter before it "serves any useful purpose"). For example, in *Cohn v. Cohn,* 1997 NMCA 011, ¶¶ 6, 8, 123 N.M. 85, 934 P.2d 279, this Court recognized a parent's common law duty to provide post-minority support to his severely disabled child. In so deciding, we implicitly recognized that the district court's independent bases of jurisdiction were not each exclusive of the other. Several other opinions provide examples of the district court's adjudicating cases in concurrent reliance upon separate bases of its jurisdiction. *See Dunne v. Dunne,* 83 N.M. 377, 377, 492 P.2d 994, 994 (1972) (addressing appeal of actions in divorce decree joined with "three additional counts sounding in tort"); *Hakkila v. Hakkila,* 112 N.M. 172, 181, 812 P.2d 1320, 1329 (Ct.App.1991) (Donnelly & Chavez, JJ., specially concurring) (recognizing ability of spouse to join common law tort claim to divorce action); *cf. Herrera,* 126 N.M. 705, 974 P.2d 675, 1999 NMCA 034, ¶¶ 6, 13–17 (enforcing as contract, without discussing issues here presented, marriage settlement agreement).

{16} We therefore conclude that any binding agreements made by a divorcing couple, which include terms in excess of what the court could order on its own, are enforceable in contract. *Cf. Ruggles v. Ruggles,* 116 N.M. 52, 70, 860 P.2d 182, 200 (1993) ("[A] voluntary property settlement between divorcing spouses, dividing their community property as they see fit, is sacrosanct[.]"); *Unser v. Unser,* 86 N.M. 648, 651, 526 P.2d 790, 793 (1974) (noting "a long recognized rule" that marriage settlement agreements

"are highly favored in the law"); *Herrera,* 126 N.M. 705, 974 P.2d 675, 1999 NMCA 034, ¶ 18 (holding parties to bargained-for, yet unequal property division, where complaining party could prove no fraud or similar ground in equity to justify undoing agreement). In the present case, however, we must also decide whether any agreement of the parties, as to post-minority child support, survived the district court's entry of its final divorce decree.

## 2. Merger of the Agreement and the Divorce Decree

{17} James argues that no matter the district court's constitutional authority to enforce contracts, there is no contract to enforce because his and Dana's original agreement merged with the court's final divorce decree, and the legal vitality of any contract contained in the MSA was thereby destroyed. We are not persuaded by James' argument.

{18} Merger is an equitable doctrine, premised upon the principles of res judicata. *See Letcher County, Ky. v. DeFoe,* 151 F.2d 987, 991 (6th Cir.1945) ("[The doctrine of merger] is related to the principle of res judicata which precludes the relitigation of the same cause of action."); *see also Risse v. Meeks,* 585 N.W.2d 875, 880 (S.D.1998) (Konenkamp, J., concurring) (noting "doctrine of merger [is] inextricably related to principle of res judicata").

{19} Generally, once an agreement between divorcing parties has been adopted and incorporated into the final divorce decree, the underlying agreement is deemed to have merged with the decree, extinguishing any independent right one of the parties might assert in contract. *See Scanlon,* 60 N.M. at 54, 287 P.2d at 246. However, this is not a rule to be blindly applied; as our Supreme Court has noted, "[t]he doctrine of merger ... will not be carried any further than the ends of justice require." *Tindall v.. Bryan,* 54 N.M. 114, 117, 215 P.2d 355, 357 (1950); *see also Letcher County, Ky. v. De-Foe,* 151 F.2d at 991 (same); *Ruidoso State Bank v. Garcia,* 92 N.M. 288, 290, 587 P.2d 435, 437 (1978) ("Although the cause of action may be merged into the judgment, the debt

may be carried forward to prevent the destruction of contract rights."); *cf. Ballengee v. New Mexico Fed. Sav. & Loan Ass'n,* 109 N.M. 423, 427, 786 P.2d 37, 41 (1990) (Montgomery, J., specially concurring) (" 'Equity regards that as done which ought to be done.' ") (quoting 2 J. Pomeroy, *Equity Jurisprudence* § 363 (5th ed.1941)). In the present case, we conclude that the agreement between James and Dana as to Amanda's college education was not rendered unenforceable by its inclusion in the final divorce decree. We explain further.

{20} First, to hold otherwise would be to violate James' and Amanda's clear intention in making the original agreement. *See In re Marriage of Olsen,* 24 Wash.App. 292, 600 P.2d 690, 694 (1979) (looking to intent of parties and court to determine whether parties' marriage settlement agreement merged with court's divorce decree); *cf. Wolcott v. Wolcott,* 101 N.M. 665, 669, 687 P.2d 100, 104 (Ct.App.1984) (resolving ambiguity regarding scope to which court's orders merged by inquiry into court's intent). In this regard, we note the parties' choice of language: "Petitioner [James] is deemed to be *contractually bound* to assist with the college education of AMANDA J. OTTINO." This is the only provision in the MSA that the parties based explicitly upon a contract theory and indicates their clear intent to separate the incurred obligation from the rest of the court's order. While the court was without power to order post-minority support of its own authority, the intent demonstrated by the parties' choice of language is all the clearer with respect to the contractual obligation.

{21} Second, to hold otherwise would exceed the purpose for merging marriage settlement agreements with divorce decrees generally. As noted above, the doctrine of merger is premised upon the doctrine of res judicata. That is, its purpose is to prevent the relitigation of decided issues. Such concern is not implicated in the present case. Moreover, we recognize that settlement agreements are typically merged with divorce decrees in order to bring the court's contempt powers to bear on defiant former spouses. *See, e.g., Hall v. Hall,* 114 N.M.

378, 386, 838 P.2d 995, 1003 (Ct.App.1992). Application of the merger doctrine in the present case would accomplish exactly the opposite result.

{22} Finally, we emphasize that where application of the doctrine would operate to prevent the enforcement of a valid and recognized right, it need not be applied. *See Tindall,* 54 N.M. at 117, 215 P.2d at 357; *see also* Restatement (Second) of Judgments § 26(1)(c) (1982) (recognizing exception to doctrine in instances where limitations upon court's jurisdiction would limit litigant's available relief). Here, to deem the contested post-minority child support agreement merged with the divorce decree would deprive the district court of jurisdiction over a separate and otherwise enforceable contract action. This would work undue prejudice against Dana and Amanda and would allow James to escape his obligation of his bargain.

{23} Our holding today does not conflict with our Supreme Court's holding in *Scanlon.* Therein, a former husband attempted to thwart his former wife's attempt to seek an increase in alimony payments by asserting a term in their marriage settlement agreement which provided that no term thereof could be modified without both parties' consent. The Court rejected this argument, concluding that the underlying agreement had wholly merged with the district court's final divorce decree.

{24} We distinguish *Scanlon* from the facts at bar. First, the Court announced no sweeping rule in that case, concluding only "[i]n the case at bar" that the agreement had merged with the divorce decree. *Id.,* 60 N.M. at 54, 287 P.2d at 246.

{25} Second, and more importantly, we note that the Court's action was motivated primarily by the former husband's attempt "to control the discretion of the district court of New Mexico." *Id.* at 49, 287 P.2d at 242. *Compare Ferret v. Ferret,* 55 N.M. 565, 574, 237 P.2d 594, 599 (1951) (holding district court not bound by parties' marriage settlement agreement), *with Wolcott,* 101 N.M. at 669, 687 P.2d at 104 ("A separation agreement is binding on the parties, but is subject to such action as the court, in its discretion,

deems appropriate."). Our ruling today is motivated by a similar concern: We will not endorse by affirmance James' attempt to limit the district court's exercise of its original jurisdiction over matters sounding in contract by an overly mechanistic construction of jurisdiction, doctrine, and statute. *See Ferret*, 55 N.M. at 574, 237 P.2d at 599 ("Hence, the district court could not be denied its statutory powers in relation thereto."); *cf. Lowe v. Bloom*, 110 N.M. 555, 559, 798 P.2d 156, 160 (1990) (Montgomery, J., dissenting) (discussing jurisdiction as an "intensely practical concept"), *cited favorably in Govich v. North Am. Sys., Inc.*, 112 N.M. 226, 230, 814 P.2d 94, 98 (1991); *The Case of the Marshalsea*, 77 Eng. Rep. 1027, 1033, (K.B. 1610) ("Jurisdictio est potestas de publico introducta, cum necessitate juris dicendi," which translates as: "Jurisdiction is a power introduced for the public good on account of the necessity of dispensing justice.").

{26} Our holding today is consistent not only with the approach adopted by a majority of other jurisdictions with statutes similar to ours, *see, e.g., Solomon v. Findley*, 167 Ariz. 409, 808 P.2d 294, 297 n. 2 (1991) (en banc), but is also consistent with our Legislature's recent amendment to Section 40-4-7(C) (providing by 1997 amendment that "[t]he court may order and enforce the payment of support for the maintenance and education after high school of emancipated children of the marriage pursuant to a written agreement between the parties"). We reference the amended version of Section 40-4-7, a provision that was not in effect at the time Dana's and Amanda's claim arose, as a persuasive expression of public policy. *See Weidler v.*

*Big J. Enters., Inc.*, 1998-NMCA-021, ¶ 18, 124 N.M. 591, 953 P.2d 1089 ("One source we look to for statements of public policy is legislation.").

## REMAINING ISSUE

{27} James argues, as an alternative basis for affirming the district court's dismissal of this action, that we should hold that even if jurisdiction was proper to the district court over the agreement for post-minority support, there was no meeting of the minds such that the provision could be enforced. The district court, however, never reached the merits of the agreement between the parties, and we will not usurp the prerogative of the district court in this regard. We, accordingly, express no opinion as to the validity of the parties' agreement, remanding this question to the district court.

## CONCLUSION

{28} For the reasons discussed above, we reverse the decision of the district court, remanding the matter for its full consideration of the merits.

{29} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Judge, MICHAEL D. BUSTAMANTE, Judge.