This decision was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of non-precedential dispositions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**GERALDINE PEREA**,

Petitioner-Appellant,

v.                                                                          **No. 34,348**

**ROMAN A. PAULINO**,

Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Deborah D. Walker, District Judge**

Enlace Comunitario
Antoinette Sedillo-Lopez
Delilah Tenorio
Linda K. Wilson
Albuquerque, NM

for Appellant

Roman A. Paulino
Gastonia, NC

Pro se Appellee

## MEMORANDUM OPINION

**BOHNHOFF, Judge.**

{1} The opinion filed in this case on June 30, 2015, is withdrawn and this opinion is substituted in its place. This is a child custody dispute that crosses state lines. Petitioner Geraldine Perea (Mother) filed her petition with a New Mexico court seeking custody of her two young sons. Respondent Roman Paulino (Father) filed his petition with a North Carolina court two weeks later, seeking an award of custody in his favor. Following an evidentiary hearing that the two courts conducted jointly, both courts determined that the North Carolina court had jurisdiction over the custody issue, and the New Mexico court entered a final order concluding that it lacked jurisdiction. Mother appeals, arguing generally that because she alleged that Father had physically abused her, the New Mexico court should have exercised at least temporary emergency jurisdiction. We disagree and affirm.

**The Uniform Child-Custody Jurisdiction and Enforcement Act**

{2} New Mexico has adopted the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA), NMSA 1978, §§ 40-10A-101 to -403 (2001). The UCCJEA establishes rules by which state courts can resolve competing claims by parents, and other persons acting as parents, for custody of children when the parents/other persons assert their claims in different states. The seminal provision of New Mexico's codification of the UCCJEA is Section 40-10A-201(a) that states:

> Except as otherwise provided in Section 204, a court of this state has jurisdiction to make an *initial* child-custody determination only if . . .

this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state[.]

Section 40-10A-201(a)(1) (emphasis added). Thus, the key initial determinant of jurisdiction is ordinarily[1] the child's home state as of the date of the commencement of the child custody proceeding or during the six months previous to that date.

{3}     Two provisions of the UCCJEA authorize the court of a state with initial custody jurisdiction to transfer jurisdiction to another state's court. First, pursuant to Section 40-10A-207(a), a court "which has jurisdiction under the [UCCJEA] . . . may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." Section 40-10A-207(b) identifies eight non-exclusive factors that the court shall consider in making an inconvenient forum decision, including "whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child[.]" Second, Section 40-10A-208(a) provides that a court of the state with initial custody jurisdiction generally shall decline to exercise

---

[1]The remaining provisions of Section 40-10A-201(a) address other circumstances under which a state's courts can obtain initial custody jurisdiction (none of which are material to resolution of the case at bar). However, Section 40-10A-201(a)(1) controls if its predicates are met.

3

such jurisdiction where "a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct[.]"

{4} Section 40-10A-204(a) authorizes a court that does not have initial custody jurisdiction to exercise "temporary emergency jurisdiction."

> A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.

*Id.* Thus, the fundamental (and logical) precondition for the exercise of temporary emergency jurisdiction is the presence of the child in the state in which the court is located.

{5} Section 40-10A-206 addresses what should happen if child custody petitions are filed concurrently in two different states. Section 40-10A-206(a) prohibits a court from exercising initial custody jurisdiction if, at the time the petition is filed with that court, "a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with the [UCCJEA.]" *Id.* While at first blush this provision would suggest that the first-filed case has jurisdiction, that is the case only if it has jurisdiction under the UCCJEA. In other words, both courts must, as a threshold matter, ascertain whether they have jurisdiction under the UCCJEA. Further, Section 40-10A-206(b) provides as follows:

4

> Except as otherwise provided in Section 204 [temporary emergency jurisdiction], a court of this state, before hearing a child-custody proceeding, shall examine the court documents and other information supplied by the parties pursuant to Section 209 [concerning other custody proceedings in which the parties are involved, or of which they are aware]. If the court determines that a child-custody proceeding has been commenced in a court in another state having jurisdiction substantially in accordance with the [UCCJEA], the court of this state shall stay its proceeding and communicate with the court of the other state. If the court of the state having jurisdiction substantially in accordance with the [UCCJEA] does not determine that the court of this state is a more appropriate forum, the court of this state shall dismiss the proceeding.

This provision effectively encourages both courts to act jointly to determine which one has initial custody jurisdiction.

**BACKGROUND**

{6}      Mother filed her custody petition in New Mexico on July 7, 2014. Father filed his complaint for child custody and child support in North Carolina on July 18, 2014. Both states have adopted the UCCJEA. *See* N.C. Gen. Stat. Ann. § 50A-101 to -349 (West. 1999, as amended through 2007). On August 15, 2014, consistent with Section 40-10A-206(b), the two courts held a joint hearing via a video-conference link to determine whether New Mexico or North Carolina had jurisdiction under the UCCJEA to hear the dispute. Both Mother (present in New Mexico) and Father (present in North Carolina) testified, about their physical presence and their children's physical presence over time in the two states and also, at least to some extent,

5

Mother's allegations that Father had physically abused her in the past. In a jurisdictional order entered on December 5, 2014, by the New Mexico court, and entered *nunc pro tunc* by the North Carolina court as of August 15, 2014, the two courts agreed and determined that North Carolina had initial custody jurisdiction under the UCCJEA.

{7}     In the December 5, 2014 jurisdictional order, the New Mexico court made the following findings:

> 1.     That the Father is a citizen and resident of Gaston County, North Carolina, and has been for more than six (6) months immediately preceding the commencement of this action.
>
> 2.     That the Mother is a citizen and resident of New Mexico. Mother last resided in Gaston County, North Carolina on or about June 26, 2014, prior to moving back to New Mexico.
>
> 3.     That . . . Father and Mother were never married, however, are the natural biological parents of two (2) children, to wit: [JP] . . . and [EP.]
>
> 4.     The minor child, [JP], was born in New Mexico. The minor child, [EP], was born in North Carolina.
>
> 5.     The children have extended family in both New Mexico and North Carolina.
>
> 6.     The parties resided in New Mexico with [JP] until December 11, 2011. That on or about December 11, 2011, the parties moved to North Carolina.
>
> 7.     The parties resided in North Carolina at 5132 Hoover Drive, Charlotte, North Carolina until December 23, 2013.

8. The parties moved to 3126 Fraley Church Road, Gastonia, North Carolina on December 23, 2013. Father and the children have resided at this address, except for temporary visits by the children to New Mexico, until the present.

9. After the parties moved to North Carolina, Mother and the children would return to New Mexico to visit with her family approximately two times per year.

10. The minor children's doctors are in North Carolina. [JP] and/or [EP] were seen at the doctor for medical and dental concerns routinely from February 7, 2012 until the present. There were at least 21 visits of record during that time. The children have not seen any medical providers in New Mexico since moving to North Carolina.

11. The parties have maintained a constant home with furnishings, furniture, toys for the children, and supplies in North Carolina since December 11, 2011.

12. Mother left North Carolina with the children on February 1, 2014. It was Father's belief that Mother would return to North Carolina with the children in March, 2014. Father purchased return airline tickets for the children and Mother to return to North Carolina on March 24, 2014. Mother did not return to North Carolina with the children in March. Mother indicated to the Court that she intended to remain in New Mexico permanently with the children.

13. Mother did not purchase furniture or furnishings for the children while in New Mexico until her return on February 1, 2014. For any of the prior return visits, Mother did not bring anything for the children other than clothing.

14. Father went to New Mexico on May 17, 2014, and the parties and the children returned to North Carolina on June 2, 2014.

15. On June 26, 2014, Mother returned to New Mexico without the children, who remained with Father in North Carolina. Father purchased a return ticket for Mother to return to North Carolina on July 7, 2014.

7

Mother did not return to North Carolina and has remained in New Mexico without the children.

. . . .

22. North Carolina is the home state of the minor children.

Mother does not challenge any of these findings, and as a result we accept them for purposes of the appeal. *See Seipert v. Johnson*, 2003-NMCA-119, ¶ 26, 134 N.M. 394, 77 P.3d 298 ("An unchallenged finding of the trial court is binding on appeal."). These findings make clear that the children had resided primarily in North Carolina between December 2011 and mid-2014, their home state was North Carolina, and they were present in North Carolina on July 7, 2014, when Mother filed her custody petition in New Mexico.

{8} This appeal followed. We now decide the issues raised in Mother's March 21, 2016 brief in chief: (1) whether the New Mexico court erred when it failed to sua sponte apply the temporary emergency jurisdiction exception to its home state jurisdictional analysis after hearing testimony from Mother regarding her allegations of domestic violence, (2) whether the New Mexico court erred when it failed to conduct a full evidentiary hearing regarding Mother's domestic violence allegations, and (3) whether public policy requires the consideration of domestic violence evidence in all child-custody jurisdiction proceedings.

{9} Contrary to Rule 12-213(A)(3) NMRA (2010, recompiled and amended as Rule 12-318 NMRA, effective Dec. 31, 2016). Mother has not provided any citations to the record proper or transcript of proceedings in her brief to support her statements about what transpired during the proceedings below and what evidence was presented at the August 15, 2014 hearing. Where a party fails to cite any portion of the record to support his or her contentions, this Court need not consider the party's argument. *Santa Fe Expl. Co. v. N. M. Oil Conservation Comm'n*, 1992-NMSC-044, ¶ 11, 114 N.M. 103, 835 P.2d 819. Notwithstanding this failure, we have carefully reviewed the record proper and the recording of the August 15, 2014 hearing, and we resolve Mother's appeal on its merits.

**ANALYSIS**

**I.      Standard of Review**

{10} "Whether the district court is possessed of jurisdiction over the subject matter of a case is a question of law that we review de novo." *Ottino v. Ottino*, 2001-NMCA-012, ¶ 6, 130 N.M. 168, 21 P.3d 37. "Statutory interpretation is an issue of law, which we review de novo." *N.M. Indus. Energy Consumers v. N.M Pub. Regulation Comm'n*, 2007-NMSC-053, ¶ 19, 142 N.M. 533, 168 P.3d 105.

**II.      The Children's Home State Was North Carolina as of, and During the Six Months Preceding July 7, 2014, the Date Mother Filed Her Petition; Therefore, the North Carolina Court Had Initial Custody Jurisdiction**

9

{11}      Section 40-10A-201(a)(1) unambiguously vests jurisdiction to decide custody questions in the court of the state that is the child's home state on the date on which the custody proceeding is commenced, or within six months of that date. Section 40-10A-102(7) defines "home state" as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding." The New Mexico and North Carolina courts jointly found not only that North Carolina was the home state of Mother's two sons, but also specific facts that support that general determination. Mother does not challenge those findings, and therefore they are conclusive on appeal. *See Seipert*, 2003-NMCA-119, ¶ 26.

**III.     Mother's Children Were Not Present in New Mexico on and After July 7, 2014; Therefore, the New Mexico Court Lacked Temporary Emergency Jurisdiction Under the UCCJEA**

{12}      Section 40-10A-204(a), quoted above, is properly construed to require: (1) the child's presence in the forum state, and (2) either (a) the child has been abandoned, or (b) the child, or a sibling or parent of the child, is being or at risk of being abused. Indeed, there is no logical rationale for a court to exercise emergency jurisdiction—regardless of the presence of other justifying circumstances—unless the child is in the forum state. Mother cites to *In re Marriage of Fernandez-Abin*, 120 Cal. Rptr. 3d 227 (Ct. App. 2011), and *Saavedra v. Schmidt*, 96 S.W.3d 533 (Tex. App.

2002), but neither case is to the contrary. Under their respective state's UCCJEA, both courts condition temporary emergency jurisdiction on the child's presence in the state. *See Fernandez-Abin*, 120 Cal. Rptr. at 247; *Saavedra*, 96 S.W.3d at 544.

**{13}** We cannot logically construe Section 40-10A-204(a) to read that a New Mexico court may exercise temporary emergency jurisdiction if the child has been abandoned or if it is necessary in an emergency to protect the child (or a sibling or parent) regardless of whether the child is present in New Mexico. Mother's reading of the statute would allow a parent to go to any state that has adopted the UCCJEA and ask that state to exercise temporary emergency jurisdiction, even if the child is not present in that state. We will not give Section 40-10A-204(a) such an implausible construction.

**{14}** It is undisputed that Mother's children were present in North Carolina on July 7, 2014, the day she filed her custody petition, and thereafter. The children were last in New Mexico on June 2, 2014. Therefore, the New Mexico court did not possess temporary emergency jurisdiction and lacked authority to act pursuant to Section 40-10A-204(a).

**IV. Mother's Argument That the New Mexico Court Erred in Failing to Sua Sponte Consider Exercising Temporary Emergency Jurisdiction Is Not Persuasive and in Any Event Is Moot**

11

{15}     During the New Mexico court proceedings, Mother failed to assert and urge the New Mexico court to exercise temporary emergency jurisdiction under Section 40-10A-204. She argues, however, that the New Mexico court should have noted the provision on its own and exercised temporary emergency jurisdiction, given that she was alleging that Father had abused her. Mother bases her argument on the language of Section 40-10A-201(a)(1), which again states in part, "Except as otherwise provided in Section 204, a court of this state has jurisdiction to make an initial child-custody determination only if . . . this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state[.]" *Id.* Mother contends that "[S]ection 201's beginning language is an instruction to any court presented with a jurisdictional issue in a custody case to always begin with a determination of whether a court's exercise of temporary jurisdiction is proper under the circumstances."

{16}     Mother's argument is strained. One cannot infer legislative special direction to sua sponte consider Section 40-10A-204's temporary emergency jurisdiction exception from the mere fact that the exception is noted in Section 40-10A-201(a)(1). More fundamentally, it is moot. Even assuming Mother herself had urged the New

Mexico court that it should exercise temporary emergency jurisdiction under Section 40-10A-204(a), or alternatively the court had raised the question itself, because Mother's children were not present in New Mexico at any time on or after the July 7, 2014, when Mother filed her petition, temporary emergency jurisdiction was lacking in any event. We do not disagree with Mother that multiple provisions of the UCCJEA, including Section 40-10A-204, provide protection for victims of domestic violence. However, the basic statutory requirement remains that the children that are the subject of the custody proceeding have to be present in the state seeking to exercise temporary emergency jurisdiction.

## V. The New Mexico Court Was Not Required to Conduct a Full Evidentiary Hearing on Mother's Allegations of Abuse

{17}    Mother also argues that as soon as the New Mexico court "was alerted to the allegations of abuse[,] . . . [it] had a duty to conduct a full evidentiary hearing regarding the issue of abuse . . . to first consider whether temporary emergency jurisdiction [was] proper[.]" As previously noted, there is no evidence in the record that Mother asked the New Mexico court to consider exercising temporary emergency jurisdiction under the UCCJEA, so Mother effectively is arguing that after raising the issue sua sponte, the New Mexico court should have conducted a "full" evidentiary hearing to determine whether abuse had occurred before or at least at the same time as the court was determining whether it possessed temporary emergency jurisdiction.

13

Mother is putting the cart before the horse. Before the New Mexico court took any action to address—on an emergency basis—Father's alleged physical abuse of Mother, the court had to establish that Mother was able to satisfy the prerequisite that the children were present in the state. At the August 15, 2014 hearing, the court therefore properly focused on the predicate requirements for such jurisdiction, including the threshold requirements that New Mexico had to be the children's home state or alternatively, the children had to be present in New Mexico. Once it was clear that these preconditions were not met, the New Mexico court not only properly declined, but was required to decline, to exercise jurisdiction, including temporary emergency jurisdiction.

**VI.   Public Policy**

{18}    Mother also argues that public policy calls for the consideration of domestic violence evidence in all child-custody jurisdiction proceedings. Under the circumstances of this case, the New Mexico court had neither initial custody jurisdiction nor temporary emergency jurisdiction. Once that jurisdiction determination had been reached—based on the findings that the children's home state was North Carolina and they were not present in New Mexico—the New Mexico court did not have further authority to act, whether on the basis of public policy concerns or otherwise.

14

{19} We emphasize, however, that the issue is not whether concerns about domestic violence are to be considered and addressed, but rather how they are to be addressed, and in particular in what forum. The UCCJEA's temporary emergency jurisdiction (Section 40-10A-204), inconvenient forum (Section 40-10A-207), and unjustifiable conduct (Section 40-10A-208) sections all contemplate addressing domestic violence allegations. However, the UCCJEA necessarily must address those and other concerns only within a structure that balances and accommodates sister states' sometimes competing jurisdictional interests. The UCCJEA resolves those interests by providing that the concerns may be addressed only by the state court that has initial jurisdiction, which in this case was the North Carolina court. Mother could have sought to have evidence of her domestic violence allegations considered by the children's home state of North Carolina when that state adjudicated the child custody proceeding. Indeed, conclusion of law, paragraph five in the December 5, 2014 jurisdictional order invited her to do this: "Now that North Carolina has been determined to be the home state of the minor children, . . . Mother, may file motions pursuant to [N.C. Gen. Stat. Ann. Section 50A-207 and/or Section 50A-208], in order for North Carolina to determine whether North Carolina is an inconvenient forum and/or whether North Carolina should decline jurisdiction by reason of conduct." We reject Mother's argument to the

15

extent that she is suggesting that public policy considerations about domestic violence should override statutory requirements for the exercise of jurisdiction.

**CONCLUSION**

{20}     The New Mexico court did not have initial custody jurisdiction or temporary emergency jurisdiction under the UCCJEA to consider Mother's custody petition. The court did not err when it did not consider sua sponte whether to exercise temporary emergency jurisdiction over Mother's petition. The court did not err when it did not conduct a full evidentiary hearing regarding Mother's domestic violence allegations. Public policy does not require New Mexico courts to consider domestic violence evidence in all child-custody jurisdiction proceedings. We affirm the New Mexico court's dismissal of Mother's petition for lack of jurisdiction.

{21}     **IT IS SO ORDERED.**


_____

**HENRY M. BOHNHOFF, Judge**


**WE CONCUR:**


_____

**M. MONICA ZAMORA, Judge**

_____

**JULIE J. VARGAS, Judge**