This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**THOMAS WULF,**

Petitioner-Appellant,

**v.**                                                                 No. 36,303

**LISA REINECKE WULF,**

Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Kea W. Riggs, District Judge**

Barbara A. Patterson Law Firm, P.C.
Barbara A. Patterson
Roswell, NM

for Appellant

Ragsdale Law Firm
Luke W. Ragsdale
Roswell, NM

for Appellee

**MEMORANDUM OPINION**

**GARCIA, Judge.**

{1}      Petitioner (ex-husband) appeals from the district court's order granting Respondent's (ex-wife's) motion to show cause and judgment awarding Respondent $87,000 plus reasonable attorney fees and interest for Petitioner's failure to re-list marital property for sale within a reasonable time since the entry, and the district court's approval and adoption, of the amended marital settlement agreement (the amended MSA). Unpersuaded that Petitioner demonstrated error, we issued a notice of proposed summary disposition, proposing to affirm. Petitioner has filed a memorandum in opposition to our notice. We have duly considered Petitioner's response and remain unpersuaded that the district court erred. We affirm.

{2}      On appeal, Petitioner contends that the district court erred by modifying the amended MSA to include that Petitioner must sell the property "within a reasonable time period[,]" [DS 4] and by holding Petitioner in contempt for failing to sell the property within a reasonable time period. [DS 4-5] Petitioner maintains that the district court's imposition of a reasonable time frame in which Petitioner was supposed to have complied with the amended MSA was a modification of an order of the court that could be achieved only through Rule 1-060 NMRA. Underlying Petitioner's contention seems to be the belief that once the district court approved and adopted the amended MSA, then it became an order of the court for all purposes. [MIO 6-9] We are not persuaded.

{3}     Our courts often recognize: "Generally, once an agreement between divorcing parties has been adopted and incorporated into the final divorce decree, the underlying agreement is deemed to have merged with the decree, extinguishing any independent right one of the parties might assert in contract." *Ottino v. Ottino*, 2001-NMCA-012, ¶ 19, 130 N.M. 168, 21 P.3d 37. The merger of an MSA with a court's order finally dissolving a marriage has specific purposes and "is not a rule to be blindly applied[.]" *Id.* "Merger is an equitable doctrine, premised upon the principles of res judicata." *Id.* ¶ 18. "That is, its purpose is to prevent the relitigation of decided issues." *Id.* ¶ 21. Also, "settlement agreements are typically merged with divorce decrees in order to bring the court's contempt powers to bear on defiant former spouses." *Id.* A merger does not destroy the "legal vitality" of the contract. *Id.* ¶ 17. The merger of a contract into a judgment of the court "changes the [nature] of [the] action," *Tindall v. Bryan*, 1950-NMSC-008, ¶ 8, 54 N.M. 114, 215 P.2d 355, from one alleging a breach of contract to one that enforces a judgment, for example. "'[T]he doctrine of merger will not be carried any further than the ends of justice require.'" *Ottino*, 2001-NMCA-012, ¶ 19 (alteration omitted) (quoting *Tindall*, 1950-NMSC-008, ¶ 8). Thus, for example, "where application of the doctrine would operate to prevent the enforcement of a valid and recognized right, it need not be applied." *Id.* ¶ 22. In sum, Petitioner does not persuade us that merger converts an MSA into an order of the court that is

mechanically treated as such for all purposes.

{4}     Specifically, we observe that our courts routinely recognize that where a court approves and adopts an MSA, resulting in a merger into a final judgment of dissolution marriage, we nevertheless construe the MSA under contract principles. *See, e.g.*, *Cortez v. Cortez*, 2009-NMSC-008, ¶¶ 3, 13-30, 145 N.M. 642, 203 P.3d 857 (observing that the MSA was merged into a final divorce decree and applying contract principles in construing it; including, examining the nature of the parties' bargain, their intentions, and applying equity to interpret the silence in the contract). Similar to the equity our Supreme Court applied in *Cortez* to interpret the silence in the contract with regard to the manner and timing of payment at issue there, our notice proposed to affirm the district court's imposition of a reasonable time frame to fill the silence on the timing of Petitioner's required compliance with the terms of the amended MSA. [CN 2-5] *See ConocoPhillips Co. v. Lyons*, 2013-NMSC-009, ¶ 67, 299 P.3d 844 ("[W]hen a contract is silent on an issue, the law implies a reasonable term to cover that issue." (internal quotation marks and citation omitted)); *Castle v. McKnight*, 1993-NMSC-076, ¶ 14, 116 N.M. 595, 866 P.2d 323 ("We hold today that reasonableness in performance will be implied in fact by this Court in a contract dispute if a requirement of reasonableness in performance will achieve the apparent intent of the parties and the purposes of the contract, and so long as the parties do not

expressly state a contrary intention.").

**{5}**     As our notice explained, in the current case, the amended MSA, as adopted by stipulated order of the district court, required Petitioner to pay Respondent $87,500 due at closing on the sale by Petitioner of 1908 Carolina Way, and did not specify a time for Petitioner's performance of this obligation. [RP 335] Respondent fulfilled her obligations under the terms of the amended MSA. [RP 443] Petitioner, however, removed the house from the market and failed to re-list the house for about four years thereafter. [RP 437] Upon Respondent's motion for an order to show cause, the district court read into the amended MSA that the home was to be sold within a reasonable period of time, stating that "[t]o conclude otherwise would frustrate the intent of the [amended] MSA." [RP 444] We see no error with the district court's inference of reasonableness with respect to the timing of Petitioner's performance, in the absence of a contractual time line or an expressly-stated intent to the contrary. *See Castle*, 1993-NMSC-076, ¶ 14.

**{6}**     We continue to be unpersuaded by Petitioner's argument that the inference of reasonableness with respect to the deadline for Petitioner's performance constituted a modification of the district court's order, such that the district court lacked jurisdiction to so in the absence of a motion under Rule 1-060(B). [MIO 6-8] *See Hall v. Hall*, 1992-NMCA-097, ¶ 38, 114 N.M. 378, 838 P.2d 995 ("As a general rule,

while a court has jurisdiction after the judgment to enforce that judgment, it lacks jurisdiction to modify the judgment except under limited circumstances."). " 'Enforce' means to compel obedience to, or to cause the provisions to be executed." *Id.* ¶ 41. " 'Modify' on the other hand means to alter, change, or vary." *Id.* We continue to believe that the district court was enforcing its judgment, not modifying it.

{7}    In *Hall*, the district court changed the divorce decree from an award of a ten-year payout to the wife to an award of property to the wife that the final decree had awarded to the husband as his separate property. *Id.* ¶¶ 39-40, 42. We held that, although the district court was attempting to enforce the money award to the wife in its final decree, the district court's order constituted an improper modification of the final decree that should have been sought under Rule 1-060(B). *Hall*, 1992-NMCA-097, ¶¶ 38, 42.

{8}    The district court's order and judgment in the current case did not change any award of the assets or redistribute the property in a manner contrary to the terms of the amended MSA. *Cf. id.* ¶ 42. Rather, the district court's order simply enforces the terms of the amended MSA and guarantees that the parties' reasonable expectations with regard to the property at 1908 Carolina Way be satisfied in a more timely fashion, by preventing Petitioner from unilaterally delaying those expectations any further. *See Hadrych v. Hadrych*, 2007-NMCA-001, ¶ 18, 140 N.M. 829, 149 P.3d

593 (rejecting the husband's argument that the district court was modifying, rather than enforcing, the final decree by prohibiting his unilateral attempt to convert the wife's retirement benefits to disability benefits, where the decree was silent on the matter, and holding that the district court's "order simply enforces the division set by the final decree, guarantees that the reasonable expectations of the parties concerning the allocation of the retirement benefits would be protected, and ensures that [the h]usband's unilateral attempt to reduce [the w]ife's benefits would go unrewarded"); *cf. Palmer v. Palmer*, 2006-NMCA-112, ¶ 18, 140 N.M. 383, 142 P.3d 971 (holding that remedial enforcement against the diminishment of a spouse's entitlement to property "is not a modification seeking an additional or different value"). If we were to hold otherwise, then we would permit a mechanical application of either the merger doctrine or contractual silence to prevent the enforcement of a valid and recognized right and deprive Respondent of her bargained-for benefit indefinitely. Based on the foregoing, we are not persuaded that the district court improperly modified the amended MSA.

{9}     Lastly, Petitioner argues that the district court erred by holding him in contempt for failing to pay Respondent $87,500, because Petitioner was necessarily unaware of the implied term the district court read into his obligation. [MIO 4-5] We are not persuaded that Respondent can disavow an obligation to act reasonably under a

7

contract that the court can enforce under its contempt powers, nor are we persuaded that Petitioner was unaware of his obligation under the express terms of the amended MSA. *See ConocoPhillips Co.*, 2013-NMSC-009, ¶ 67 ("[W]hen a contract is silent on an issue, the law implies a reasonable term to cover that issue." (internal quotation marks and citation omitted)). By taking the home off the market and never paying Respondent $87,500, Petitioner was in violation of the district court's order requiring him to sell the home in order to give $87,500 to Respondent at closing. Petitioner kept the home off the market for nearly four years when Respondent filed the motion for an order to show cause. [RP 437] We are not persuaded that these facts give rise to any concern that the district court was reading language into the amended MSA to hold him contempt. *Cf. Hall*, 1992-NMCA-097, ¶ 2 (acknowledging that a district court can "enforce the 'property division' award through the use of its contempt powers"). Additionally, "[w]hat constitutes a reasonable time, under the evidence, is a question of fact" for the fact-finder. *Smith v. Galio*, 1980-NMCA-134, ¶ 5, 95 N.M. 4, 617 P.2d 1325. Under the evidence, we hold that the district court could properly rule that Petitioner acted in defiance of the amended MSA, and that, after nearly four years, an unreasonable time period had lapsed before Petitioner made any efforts to comply with the amended MSA. *See Ottino*, 2001-NMCA-012, ¶ 21 (stating that "settlement agreements are typically merged with divorce decrees in order to bring the

8

court's contempt powers to bear on defiant former spouses"). We see no error in the district court's ruling.

{10}    For the reasons stated above and in our notice, we affirm the district court's order.

{11}    **IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**LINDA M. VANZI, Chief Judge**

_____
**MICHEL E. VIGIL, Judge**